## IN THE CIRCUIT COURT OF MARION COUNTY, MISSISSIPPI

GLEN PACE                                                                    PLAINTIFF

V.                                                    NO. 21CV304 AM

CIRRUS DESIGN CORPORATION d/b/a
CIRRUS AIRCRAFT CORPORATION;
CONTINENTAL MOTOR CORPORATION;
AMSAFE;
ARAPAHOE AERO;
BRAVO AVIATION (fictitious Defendant);
CHARLIE AVIATION (fictitious Defendant);
DEFENDANTS, JOHN DOES I THROUGH IV
DEFENDANTS, XYZ CORPORATIONS I THROUGH IV                 DEFENDANTS



FILED
NOV 1 9 2021
JANETTE NOLAN, CIRCUIT CLERK
BY_____D.C.

### COMPLAINT
### Jury Trial Requested

Plaintiff, Glen Pace, by and through his attorney of record, files this his Complaint

against Defendants, Cirrus Design Corporation d/b/a Cirrus Aircraft Corporation; Continental

Motor Corporation; Amsafe; Arapahoe Aero; Bravo Aviation (fictitious Defendant); Charlie

Aviation (fictitious Defendant); Defendants, John Does I Through IV, and Defendants, XYZ

Corporations I Through IV, and in support thereof would show unto the Court the following:

### PARTIES

1.      Plaintiff, Glen Pace, is an adult resident citizen of Marion County, Mississippi,

and his address is 202 E. Reservoir Road, Columbia, Mississippi 39429.

2.      Defendant, Cirrus Design Corporation d/b/a Cirrus Aircraft Corporation,

(hereinafter referred to as "Cirrus") is an aircraft manufacturer and is a corporation organized and

existing under and by virtue of the laws of a state other than the State of Mississippi. Cirrus is

doing business in the State of Mississippi and has its principal place of business located at 4515

Taylor Circle, Duluth, Minnesota 55811. Cirrus is doing business in the State of Mississippi by

virtue of the fact that it has committed a tort, in whole or in part, in the State of Mississippi, and

as a result thereof, Cirrus is doing business in the State of Mississippi. Further, Cirrus Aircraft

Corporation is selling Cirrus aircraft, Cirrus aircraft parts, and other aviation products in the State

of Mississippi; advertised its products in Mississippi through various aviation related magazines

which are distributed in the State of Mississippi; and is engaged in business and has substantial

contacts with the State of Mississippi, and has purposely directed its sales activity and sales

promotions with Mississippi residents and directed its business towards Mississippi residents and

has purposely availed itself of doing business in the State of Mississippi. Cirrus may be served

with process of this Court pursuant to the Mississippi Rules of Civil Procedure.

3.    Defendant, Continental Motor Corporation, is a corporation organized and

existing under and by virtue of the laws of a state other than the State of Mississippi but is doing

business in the State of Mississippi. Continental Motor Corporation has its principal place of

business located at 8600 County Road, Fairhope, Alabama 36532. Continental Motor

Corporation is doing business in the State of Mississippi by virtue of the fact that it has

committed a tort, in whole or in part, in the State of Mississippi, and as a result thereof,

Continental Motor Corporation is doing business in the State of Mississippi. Further,

Continental Motor Corporation is engaged in business and has substantial contracts in the State

of Mississippi and is selling Continental engines, Continental engine parts, and other aviation

products in the State of Mississippi; advertised its products in Mississippi through various

aviation related magazines which are distributed in the State of Mississippi; and is engaged in

business and has substantial contacts with the State of Mississippi, and has purposely directed its

sales activity and sales promotions with Mississippi residents and directed its business towards

2

Mississippi residents and has purposely availed itself of doing business in the State of

Mississippi. Continental Motor Corporation may be served with process of this Court pursuant

to the Mississippi Rules of Civil Procedure.

      4.     Continental Motor Corporation designed, manufactured, overhauled, and sold the

Continental engine for the subject aircraft to be used by the owner of the aircraft and Glen Pace

in the State of Mississippi.

      5.     Defendant, Amsafe, is a corporation organized and existing under and by virtue of

the laws of a state other than the State of Mississippi but Amsafe is doing business in the State of

Mississippi. Amsafe has its principal place of business located at 1043 N. 47th Avenue, Phoenix,

Arizona 85043. Amsafe is doing business in the State of Mississippi by virtue of the fact that it

has committed a tort, in whole or in part, in the State of Mississippi, and as a result thereof,

Amsafe is doing business in the State of Mississippi. Further, Amsafe is engaged in business,

has substantial contacts in the State of Mississippi, and is selling seatbelts, shoulder harnesses,

seatbelt components, restraint system, the inertial reel, their component parts, and other aviation

products in the State of Mississippi; advertised its products in Mississippi through various

aviation related magazines which are distributed in the State of Mississippi; and is engaged in

business and has substantial contacts with the State of Mississippi, and has purposely directed its

sales activity and sales promotions with Mississippi residents and directed its business towards

Mississippi residents and has purposely availed itself of doing business in the State of

Mississippi. Amsafe may be served with process of this Court pursuant to the Mississippi Rules

of Civil Procedure.

6.      Amsafe designed, manufactured, overhauled, inspected, certified, and maintained the Amsafe and sold the seatbelt, shoulder harness, seatbelt components, restraint system, and the inertial reel, for the subject aircraft to be used by the owner of the aircraft and Glen Pace in the State of Mississippi.

7.      Defendant, Arapahoe Aero, is a corporation organized and existing under and by virtue of the laws of a state other than the State of Mississippi but is doing business in the State of Mississippi. Arapahoe Aero has its principal place of business located at 12760 East Control Tower Road, Englewood, Colorado and holds itself out to the public as a company offering engine overhaul, engine rebuilds, and repair to owners and pilots flying Cirrus aircraft including, but not limited to, the owner of the aircraft, and Glen Pace, the pilot of the aircraft and is engaged in business and has substantial contracts in the State of Mississippi, and therefore has purposely directed its aviation products in the State of Mississippi; advertised its products in Mississippi through various aviation related magazines which are distributed in the State of Mississippi; and is engaged in business and has substantial contacts with the State of Mississippi, and has purposely directed its sales activity and sales promotions with Mississippi residents and directed its business towards Mississippi residents and has purposely availed itself of doing business in the State of Mississippi. Arapahoe Aero also entered into a contract with a resident of the State of Mississippi to be performed in whole or in part in the State of Mississippi and as a result thereof is doing business in the State of Mississippi. Arapahoe Aero may be served with process of this Court pursuant to the Mississippi Rules of Civil Procedure.

8.      Defendant, Bravo Aviation (fictitious Defendant), is an individual, corporation, limited liability company, partnership, entity, residing in Mississippi or is organized and existing under and by virtue of the laws of the State of Mississippi.  Defendant, Bravo Aviation, is doing business in the State of Mississippi and has its principal place of business located in Mississippi. The true name of fictitious Defendant, Bravo Aviation, will be substituted once its identity is known.  Bravo Aviation was the prior owner of the aircraft and responsible for the maintenance and inspection of the aircraft, the aircraft engine, and the aircraft component parts while Bravo Aviation owned and operated the aircraft.  Bravo Aviation was responsible for the repair, maintenance, inspection, and certification certifying the aircraft as airworthy including but not limited to the aircraft, the aircraft engine, the aircraft and aircraft engine component parts, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe airbag, Amsafe inertial reel, and their component parts.  Bravo Aviation, when it was the owner and operator of the aircraft, aircraft engine, and their component parts, was negligent in the maintenance, repair, inspection, certification of the aircraft, aircraft engine, and their component parts. Bravo Aviation's negligence was a contributing proximate cause of the engine failure and crash of the aircraft and injuries to Glen Pace on November 22, 2019. Bravo Aviation may be served with process of this Court pursuant to the Mississippi Rules of Civil Procedure.

9.      Defendant, Charlie Aviation (fictitious Defendant), is a corporation organized and existing under and by virtue of the laws of a state other than the State of Mississippi but is doing business in the State of Mississippi.  The true name of fictitious Defendant, Charlie Aviation, will be substituted once its identity is known.  Charlie Aviation holds itself out to the public as a company offering engine overhaul, engine rebuilds, and repair to owners and pilots flying Cirrus

5

aircraft including, but not limited to, the owner of the aircraft, and Glen Pace, the pilot of the aircraft and is engaged in business and has substantial contracts in the State of Mississippi, and therefore has purposely directed its aviation products in the State of Mississippi; advertised its products in Mississippi through various aviation related magazines which are distributed in the State of Mississippi; and is engaged in business and has substantial contacts with the State of Mississippi, and has purposely directed its sales activity and sales promotions with Mississippi residents and directed its business towards Mississippi residents and has purposely availed itself of doing business in the State of Mississippi. Charlie Aviation may be served with process of this Court pursuant to the Mississippi Rules of Civil Procedure. Charlie Aviation also entered into a contract with a resident of the State of Mississippi to be performed in whole or in part in the State of Mississippi and as a result thereof is doing business in the State of Mississippi.

10.     Defendants, John Does I through IV, are corporations, entities, partnerships, limited partnerships, limited liability companies, or individuals whose true identities and addresses are unknown at this time, but who may be liable to the Plaintiff in this cause of action. Plaintiff will amend his Complaint to substitute the unknown Defendants and fictitious Defendants once the identities of John Does I through IV are learned and once their liabilities are made known to the Plaintiff. Defendants, John Does I through IV, are unknown Defendants, who repaired, maintained, inspected, manufactured, designed, certified, overhauled, rebuilt, and/or sold the Cirrus Aircraft, the Continental engine, and/or their component parts or otherwise distributed or placed the aircraft, aircraft engine, and/or their component parts into the stream of commerce, and/or caused or substantially contributed to the engine failure, the subsequent crash of the aircraft, and the injuries and damages to the Plaintiff.

11.     Defendants, XYZ Corporations I through IV, are corporations, entities, partnerships, limited partnerships, limited liability companies, or individuals whose true identities and addresses are unknown at this time, but who may be liable to the Plaintiff in this cause of action.  Plaintiff will amend his Complaint to substitute the unknown Defendants and fictitious Defendants once the identities of XYZ Corporations I through IV are learned and once their liabilities are made known to the Plaintiff.  Defendants, XYZ Corporations I through IV, are unknown Defendants, who may have or have had interests of ownership, control, management, employment, and/or agency with the Defendants in this cause, and who may be liable to Plaintiff in the premises for their negligent acts and/or omissions.

12.     On November 22, 2019, the Cirrus Aircraft SR22, FAA registration number N969JM, was on a routine flight from Dallas, Texas to Hattiesburg, Mississippi, with stops in Terrell, Texas, and Gladewater, Texas.  The aircraft departed the airport in Dallas, Texas with Glen Pace, the sole pilot and pilot in command of the aircraft.  The pilot of the aircraft departed Terrell, Texas and was flying the aircraft on its most direct route of flight in or near Tyler, Texas. The engine began shaking very hard so Glen Pace immediately went to the engine checklist, and everything appeared normal.  Glen Pace then left everything forward a couple of minutes to verify everything was ok and was about to begin his cruise checklist again when he noticed his number five cylinder went red, which was not normal.  The two middle gauges blanked out but came back.  Glen Pace noticed his manifold pressure was about 28.5 and realized the engine was not making full power.  The aircraft could not maintain altitude and began descending.  Glen Pace radioed air traffic control that he was having engine problems and needed a place to divert. Air traffic control gave him two options neither of which had IFR approaches. Air traffic control

subsequently gave him two options both of which had IFR approaches. The engine began to

smooth out and Glen Pace was able to make a small climb of about 200 feet per minute. Glen

Pace climbed to approximately 2,400 feet and was transferred to Longview approach during the

climb. A short time later the engine began to shake again and Glen Pace declared an emergency

and asked for vectors to the final approach fix for KTYR since he was about six miles away. The

controller acknowledged the emergency and gave Glen Pace clearance, but shortly thereafter the

oil pressure began dropping to the extreme low sides of normal range. The aircraft would hold

its altitude and Glen Pace began descending. Glen Pace radioed air traffic control that he was

going to pull the emergency chute on the extreme low side of the possibilities. The aircraft was

still descending and Glen Pace could not maintain altitude. Glen Pace told the air traffic

controller that he was going to pull the chute when he reached 1,000 feet. Glen Pace was having

to navigate around obstacles that kept appearing on the screen. The power was reduced and he

went from low boost to high boost in case he was having a fuel issue. Once Glen Pace reached

1,450 feet (or 900 feet above the ground) he could see nothing except some broken clouds and

trees below. Glen Pace, once he reached about 700 feet above ground (at the base of the clouds),

noticed a field to his right and he turned towards the field to pull the chute. The stall warning

came on and Glen Pace lowered the nose of the aircraft to prevent a stall. Glen Pace saw a fence

and tower in the field and after entering the field, deployed the chute. Upon deployment Glen

Pace's seatbelt did not function properly and Glen Pace hit his head on the dash causing a large

laceration and caused him to be unconscious. The Cirrus emergency parachute, Amsafe restraint

system, Amsafe shoulder harness, Amsafe seatbelts, Amsafe airbags, Amsafe inertial reel, and

their component parts failed causing Glen Pace to hit his head on the dash rendering him

unconscious.  The Cirrus emergency parachute, Amsafe restraint system, Amsafe shoulder harness, Amsafe seatbelts, Amsafe airbags, Amsafe inertial reel, and their component parts should have been designed and built to allow the pilot to survive a landing with substantial forces.  Further, prior to and on impact the Cirrus emergency parachute, Amsafe restraint system, Amsafe shoulder harness, Amsafe seatbelts, Amsafe airbags, Amsafe inertial reel, and their component parts failed causing additional injuries to Glen Pace.

13.     The aircraft crashed in Smith County, Tyler, Texas, and occurred as a result of the combined negligence of Cirrus, Continental Motor Corporation, Arapahoe Aero, Amsafe, Bravo Aviation, Charlie Aviation, Defendants, John Does I Through IV, and Defendants, XYZ Corporations I Through IV.

14.     On all relevant occasions, the Defendants were acting in concert with each other and as such were and are agents for each other and liable for each others actions, conduct, errors and omissions pursuant to the laws of Master/Servant, Principal/Agent, Employer/Employee, and *respondeat superior*.  Defendants were acting in the furtherance of each others' business or interests and as such are responsible and liable for each others' actions, conduct and/or omissions.  Plaintiffs would further show unto the Court that the Defendants (by and through their actions, conduct, and/or omissions, in joint concert and course of dealings with each other) caused unreasonably dangerous conditions to exist and caused the damages of the Plaintiff.

COUNT I

15.     Plaintiff adopts by reference and realleges each and every allegation of all paragraphs of all counts of the Complaint the same as though specifically set out herein again.

16.     On November 22, 2019, Glen Pace, at the time of the flight in question and at the time of the crash, was the pilot in command of the Cirrus aircraft as it proceeded on a planned direct flight from Dallas, Texas to Hattiesburg, Mississippi, with stops in Terrell, Texas and Gladewater, Texas.  On the occasion in question, the engine manufactured by Continental Motor Corporation and serviced and repaired by Arapahoe Aero failed, and Glen Pace made the decision to descend to engage the emergency parachute that was manufactured by Cirrus and was installed in the Cirrus aircraft.  The Cirrus aircraft could not maintain altitude, and Glen Pace made the decision to descend to engage the emergency parachute that was manufactured by Cirrus and installed in the Cirrus aircraft upon engine failure. The aircraft descended through the clouds and when he approached 1000 feet Glen Pace engaged the emergency parachute after he had directed the aircraft towards an empty field.  The Cirrus aircraft emergency parachute did not operate as advertised and as represented to Glen Pace and failed and caused the aircraft to crash into the ground.  The Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, and their component parts which were designed, manufactured, installed, inspected, and maintained by Cirrus and Amsafe which would permit the pilot to survive a survivable crash, failed before and on impact.  The Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, and their component parts failed and caused substantial injuries and damages to Glen Pace.

17.     On the occasion in question the Cirrus aircraft and Continental engine experienced power failure and caused the aircraft to crash, contributing to the cause of Glen Pace's injuries.

10

18.     On or about November 22, 2019, the Cirrus Aircraft SR22, FAA registration number N969JM, Continental engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were manufactured, designed, and sold by Cirrus, Amsafe, and Continental. The Defendants, Cirrus, Amsafe, and Continental, maintained control of the maintenance of the aircraft by requiring that the Cirrus aircraft and Continental engine be overhauled and rebuilt at the direction of Cirrus and Continental.  Cirrus and Continental further maintained control by requiring periodic maintenance inspections on the aircraft, the aircraft engine, and the aircraft component parts for maintenance overhauls and for rebuilding the aircraft, the aircraft engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts.  The aircraft was last maintained by Arapahoe Aero, Bravo Aviation, and Charlie Aviation.

19.     Defendants, Arapahoe Aero, Bravo Aviation, and Charlie Aviation, were the entities that were responsible for the maintenance and repairs on the Cirrus aircraft, the Continental engine, and their component parts, including but not limited to the Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts designed to permit a pilot to survive a survivable crash without significant injury.  Defendants, Cirrus, Continental, Arapahoe Aero, Bravo Aviation, and Charlie Aviation, were jointly responsible for the maintenance, installation, and repairs on the Cirrus aircraft, the Continental aircraft engine, and their component parts, including but not limited to the Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe

airbags, and their component parts designed to permit a pilot to survive a survivable crash without significant injury.

20.     Defendants, Cirrus, Continental, Arapahoe Aero, Bravo Aviation, Charlie Aviation, and Defendants, John Does I Through IV, were additionally negligent for failing to keep and maintain the Cirrus aircraft, Continental engine, and their component parts, including but not limited to the Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts (which were designed to allow a pilot to survive a survivable crash without significant injury), in a reasonably safe and airworthy condition; carelessly and recklessly maintaining and repairing the aircraft, aircraft engine; violating Federal Aviation Regulations constituting negligence per se; and failing to exercise due and reasonable care under the circumstances.

21.     The aircraft engine failed and Glen Pace could not maintain altitude.  Glen Pace, notified authorities of his engine failure and made an attempt to control the aircraft that was losing altitude and had to make an emergency and forced landing in a vacant field.  On the occasion in question, the Cirrus aircraft, the Continental engine, and their component parts, including but not limited to the Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts (were designed to allow a pilot to survive a survivable crash without significant injury), were defective and unreasonably dangerous.  The unreasonably dangerous and defective conditions of the Cirrus aircraft, the Continental aircraft engine, and their component parts were contributing proximate causes of the engine failure on November 22, 2019.  The unreasonably dangerous condition Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus

12

restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe

airbags, and their component parts were contributing proximate causes of the crash of the

aircraft, and the injuries and damages to Plaintiff.

22.      Defendants, Cirrus, Continental, Arapahoe Aero, Bravo Aviation, Charlie

Aviation, and Defendants, John Does I Through IV, (as the entities responsible for the

maintenance and inspection of the Cirrus aircraft, Continental engine, and their component

parts), performed maintenance and inspection on the Cirrus aircraft, the Continental aircraft

engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder

harness, Amsafe inertial reel, Amsafe airbags, and their component parts.  Cirrus, Continental,

Arapahoe Aero, Bravo Aviation, Charlie Aviation, and Defendants, John Does I Through IV,

were the entities responsible for certifying, servicing, repairing, testing, inspecting, overhauling,

rebuilding, and annualling the Cirrus aircraft, the Continental engine, Cirrus emergency

parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial

reel, Amsafe airbags, and their component parts with knowledge that the Cirrus aircraft would be

flown by pilots such as Glen Pace on flights such as the flight that occurred on November 22,

2019.  Defendants, Cirrus, Continental, Arapahoe Aero, Bravo Aviation, Charlie Aviation, and

Defendants, John Does I Through IV, were required to test, inspect, certify, maintain, overhaul,

repair, install, rebuild, own, operate, sell, and annual the Cirrus aircraft, the Continental engine,

Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness,

Amsafe inertial reel, Amsafe airbags, and their component parts so that the Cirrus aircraft,

Continental engine, and their component parts would be safe, not dangerous, and not defective.

23.     Prior to November 22, 2019, Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, and their component parts were manufactured by Cirrus, Amsafe, and Continental and were defective and/or unreasonably dangerous to Plaintiff.  The unreasonably dangerous and defective condition of the Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were contributing proximate causes of the engine failure and crash on November 22, 2019, and the injuries and damages of the Plaintiff.

24.     On the occasion in question, Cirrus, Continental, Arapahoe Aero, Bravo Aviation, Charlie Aviation, and Defendants, John Does I Through IV, were negligent, and their negligence was a contributing proximate cause of the crash in question, the injuries and damages to the Plaintiff because the emergency parachute, seatbelt, airbags, and shoulder harness and other component parts designed to allow a pilot to survive a survivable crash without significant injury failed.  Plaintiff's damages include but are not limited to pre-impact fright before the crash and excruciating pain and suffering during and after the crash.

25.     On and before November 22, 2019, Cirrus and Continental breached their duties by causing the Cirrus aircraft, the Continental engine, and their component parts, including but not limited to the Cirrus emergency parachute, Cirrus seatbelt, shoulder harness, airbags, and other component parts (designed to allow a pilot to survive a survivable crash without significant injury), to be placed on the market and in service when the aircraft, the aircraft engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were not safe for their intended purposes

14

and uses.  The Cirrus aircraft, the Continental engine, Cirrus emergency parachute, Cirrus

restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe

airbags, and their component parts were expected to and did reach the pilot and operator of the

aircraft prior to the time of the crash.  The Cirrus aircraft, Continental engine, Cirrus emergency

parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial

reel, Amsafe airbags, and their component parts were in a defective and unreasonably dangerous

condition, which was a contributing proximate cause of the crash and the excruciating painful

injuries suffered by Plaintiff, Glen Pace.

26.     Prior to November 22, 2019, the Cirrus aircraft, the Continental aircraft engine,

Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness,

Amsafe inertial reel, Amsafe airbags, and their component parts were manufactured, designed,

repaired, installed, inspected, and designated airworthy by Cirrus, Amsafe, and Continental.  On

the occasion in question, Cirrus, Amsafe, and Continental, were negligent in the design,

manufacture, repair, inspection, and sale of the aircraft, aircraft engine, and their component

parts, which included the Cirrus emergency parachute, Cirrus emergency parachute, Cirrus

restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe

airbags, and their component parts (designed to allow a pilot to survive a survivable crash

without significant injury), which rendered the aircraft, aircraft engine, Cirrus emergency

parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial

reel, Amsafe airbags, and their component parts defective and unreasonably dangerous.  The

Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe

seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component

parts were designed, manufactured, inspected, installed, sold, and distributed by Cirrus and

Continental; were defective and unreasonably dangerous; and the defective and unreasonably

dangerous condition of the Cirrus aircraft, Continental engine, Cirrus emergency parachute,

Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe

airbags, and their component parts were a contributing proximate cause of the engine failure, the

crash in question, and the catastrophic injuries and damages to Plaintiff, Glen Pace.

      27.     Cirrus, Amsafe, and Continental manufactured, designed, and sold the Cirrus

aircraft, Continental engine, and their component parts, including but not limited to the Cirrus

emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt,

Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts

(designed to allow a pilot to survive a survivable crash without significant injury), and as a result

thereof were required to make sure that the Cirrus aircraft, Continental engine, Cirrus emergency

parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial

reel, Amsafe airbags, and their component parts were properly manufactured, designed, installed,

repaired, and sold and that the Cirrus aircraft, Continental engine, and their component parts

were properly installed, inspected, maintained, and that the aircraft, aircraft engine, emergency

parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe

shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts  (designed to

allow a pilot to survive a survivable crash without significant injury) were airworthy.  Cirrus,

Amsafe, and Continental certified, inspected, overhauled, rebuilt, manufactured, designed, sold,

and installed the Cirrus aircraft, Continental engine, and their component parts with knowledge

that the aircraft, aircraft engine, and their component parts would be used on flights such as the

flight that occurred on November 22, 2019.  Cirrus and Continental were required to inspect, test,

certify, modify, overhaul, manufacture, design, install, and/or sell the Cirrus aircraft, the

Continental engine, and their component parts, (including but not limited to the Cirrus

emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt,

Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts

(designed to allow a pilot to survive a survivable crash without significant injury), so that the

aircraft, the aircraft engine, and their component parts would be safe, not dangerous, and not

defective.

      28.     On and before November 22, 2019, Cirrus, Continental, Arapahoe Aero, Bravo

Aviation, Charlie Aviation, and Defendants, John Does I Through IV, performed modifications,

repairs, annuals, overhauls, rebuilds, inspections, and installations on the aircraft, the aircraft

engine, and their component parts, including but not limited to the Cirrus emergency parachute,

Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness,

Amsafe inertial reel, Amsafe airbags, and their component parts (designed to permit a pilot to

survive a survivable crash without significant injury), and were required to modify, repair,

overhaul, rebuild, inspect, and install the Cirrus aircraft, Continental engine, and their component

parts in accordance with FAA regulations and in accordance with good mechanic and inspector

practices.  Cirrus, Continental, Arapahoe Aero, Bravo Aviation, Charlie Aviation, and

Defendants, John Does I Through IV inspected, modified, annualled, repaired, rebuilt,

overhauled, and installed the Cirrus aircraft, Continental engine, and their component parts and

certified the Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus restraint

system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and

their component parts as being airworthy, safe, not defective, and not unreasonably dangerous. Contrary to the representations and certifications made by Cirrus, Continental, Arapahoe Aero, Bravo Aviation, Charlie Aviation, and Defendants, John Does I Through IV, that the aircraft, the aircraft engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were airworthy. As documented by the repairs, overhauls, annuals, and rebuilding of the Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts in the aircraft and engine logs and in the aircraft engine maintenance documents the Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were defective, unsafe, and unreasonably dangerous. In addition, the Defendants, Cirrus, Continental, Arapahoe Aero, Bravo Aviation, Charlie Aviation, and Defendants, John Does I Through IV, carelessly inspected, modified, repaired, annualled, rebuilt, installed, and/or overhauled the Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts and falsely represented that the Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were airworthy, safe, not defective, and not unreasonably dangerous.

29.     On the occasion in question, the negligence of Cirrus, Continental, Arapahoe Aero, Bravo Aviation, Charlie Aviation, and Defendants, John Does I Through IV, were

contributing proximate cause of the engine failure, the crash of the aircraft, the damages of Glen

Pace including but not limited to the pre-impact fright of Plaintiff before the crash; excruciating

pain and suffering from the crash; and the injuries and damages sustained by Plaintiff during and

after the crash.

30.     The Plaintiff suffered excruciating painful injuries during and after the crash, and

the crash of the aircraft, the failure of the Cirrus emergency parachute, Cirrus emergency

parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial

reel, Amsafe airbags, and their component parts severely damaged the Plaintiff and the damages

sustained by Plaintiff were proximately caused by the negligence of the Defendants, Cirrus,

Continental, Arapahoe Aero, Bravo Aviation, Charlie Aviation, and Defendants, John Does I

Through IV.  The Plaintiff's damages are in the amount of at least $4,500,000.00 and punitive

damages in an amount sufficient to deter the Defendants, Cirrus, Continental, Arapahoe Aero,

Bravo Aviation, Charlie Aviation, and Defendants, John Does I Through IV, from such reckless

and oppressive conduct in the future.

WHEREFORE, PREMISES CONSIDERED Plaintiffs demand Judgment of and from the

Defendants, Cirrus Design Corporation d/b/a Cirrus Aircraft Corporation; Continental Motor

Corporation; Arapahoe Aero; Bravo Aviation; Charlie Aviation; Defendants, John Does I

Through IV, and Defendants, XYZ Corporations I Through IV, for the damages sustained by

Plaintiff, Glen Pace, in the  amount of $4,500,000.00; punitive damages in an amount sufficient

to deter the Defendants from such reckless and oppressive conduct in the future; prejudgment

interest; post judgment interest; and all costs.

## COUNT II

31.     Plaintiff adopts by reference and realleges each and every allegation of all paragraphs of all counts of the Complaint the same as though specifically set out herein again.

32.     Cirrus, Amsafe, and Continental were, at all relevant times, in the business of designing, manufacturing, testing, processing, modifying, overhauling, warning, factory overhauling, rebuilding, engineering, installing, inspecting, servicing, distributing, maintaining, selling, and delivering the Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were designed to permit a pilot to survive a survivable crash without significant injury.  On and before November 22, 2019, the Cirrus aircraft, Continental engine, and their component parts were represented by Cirrus, Amsafe, and Continental to be safe and suitable for the purposes for the flight on November 22, 2019.  The Cirrus aircraft, the Continental engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were further represented, marketed, and sold by Cirrus, Amsafe, and Continental as airworthy, safe, not defective, and not unreasonably dangerous.

33.     On the occasion in question, the Cirrus aircraft, the Continental aircraft engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were defective, unreasonably dangerous, and failed, contributing to the cause of the engine failure, the crash of the aircraft, and the injuries and damages to Glen Pace.  On the occasion in

20

question, the Cirrus aircraft, the Continental engine, Cirrus emergency parachute, Cirrus

emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe

inertial reel, Amsafe airbags, and their component parts were further defective and unreasonably

dangerous because of the failure to provide an airworthy aircraft and engine and failure to

provide crash worthy component parts, including but not limited to the Cirrus emergency

parachute, Cirrus seatbelt, shoulder harness, and other component parts designed to allow a pilot

to survive a survivable crash without significant injury.  The Defendants, Cirrus, Amsafe, and

Continental, manufactured and placed in the stream of commerce the Cirrus aircraft, Continental

engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system,

Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their

component parts which failed contributing to the crash of the aircraft and the injuries and

damages to the Plaintiff, Glen Pace.  The Cirrus aircraft, the Continental engine, Cirrus

emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt,

Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were

negligently, improperly, and defectively designed, manufactured, or maintained.  The failure of

the aircraft, the aircraft engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus

restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe

airbags, and their component parts rendered the aircraft, aircraft engine, Cirrus emergency

parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe

shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts unsafe for

their intended use and purposes.  The design and manufacture of the aircraft, the aircraft engine,

and their component parts, including but not limited to the Cirrus emergency parachute, Cirrus

emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt,

Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts

(designed to permit a pilot to survive a survivable crash without significant injury), were

generally unsafe, defective, unreasonably dangerous, and inadequate, and Cirrus, Amsafe, and

Continental knew or should have known of the defective and unsafe conditions; and should have

foreseen the defective, unsafe, and unreasonably dangerous conditions, which directly caused or

contributed to the cause of the engine failure, the cause of the crash, and the excruciating pain

and injuries suffered by Glen Pace.

34.     The Cirrus aircraft, Continental aircraft engine, Cirrus emergency parachute,

Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness,

Amsafe inertial reel, Amsafe airbags, and their component parts were in defective conditions that

were unreasonably dangerous to the users of the aircraft, the aircraft engine, Cirrus emergency

parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe

shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts which were

designed to permit a pilot to survive a survivable crash without significant injury, at the time that

the aircraft, aircraft engine, and their component parts left the places of business of the

Defendants and the places where the aircraft, aircraft engine, and their component parts were

designed, manufactured, assembled, installed, shipped, sold, and placed in the stream of

commerce.

35.     The Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus

emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe

inertial reel, Amsafe airbags, and their component parts were manufactured, designed,

engineered, modified, processed, tested, overhauled, serviced, inspected, installed, distributed, maintained, sold, and delivered by Cirrus, Amsafe, and Continental. The Defendants, Cirrus, Amsafe, and Continental, sold the aircraft, aircraft engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were designed to permit a pilot to survive a survivable crash without significant injury, with knowledge that they would be used by pilots on flights such as that on November 22, 2019. Cirrus, Amsafe, and Continental had duties to properly engineer, manufacture, design, modify, overhaul, rebuild, test, process, inspect, service, install, perform factory overhauls or rebuilds, distribute, maintain, sell, or deliver the aircraft, the aircraft engine, and their component parts, including but not limited to the Cirrus emergency parachute, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts designed to allow a pilot to survive a survivable crash without significant injury, so that the aircraft, aircraft engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts would be airworthy, safe, not defective, and not unreasonably dangerous.

36.     Cirrus, Amsafe, and Continental breached their duties by placing the Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts on the market and in conditions that were not reasonably safe for their intended purposes and uses. The Cirrus aircraft, Continental engine, Cirrus emergency

23

parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe

shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were expected

to and did reach the pilot, Glen Pace, without substantial changes in their conditions from the

time they left the places of the manufacturer and seller, and/or placed on the market and sold

until the time of the crash on November 22, 2019. The Cirrus aircraft, the Continental aircraft

engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system,

Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their

component parts were used by Glen Pace on the November 22, 2019, flight in the manner and for

the purposes for which they were intended, manufactured, and sold.

     37.     The Cirrus aircraft, Continental engine, and their component parts were defective,

because the aircraft engine failed; because the Cirrus aircraft was not crash worthy; because the

Cirrus aircraft emergency parachute failed; because the Cirrus restraint system failed; because the

Amsafe seatbelt failed; because the Amsafe shoulder harness failed; because the Amsafe inertial

reel failed, and their components parts failed; and because Cirrus, Amsafe, and Continental failed

to give adequate warnings and instructions to the pilot in command and because the aircraft,

aircraft engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system,

Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their

component parts were in defective conditions and were negligently and improperly designed.

Further, the Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus emergency

parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial

reel, Amsafe airbags, and their component parts were defective, because they failed to perform to

express factual representations upon which the Plaintiff justifiably relied and elected to use the product and were defective, because express warranties were breached.

38.     The defective condition of the aircraft, the aircraft engine, and their component parts, including but not limited to the Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts rendered the aircraft, aircraft engine, and their component parts unreasonably dangerous to the Plaintiff.  Cirrus failed to properly manufacture the aircraft and Cirrus's failure to design, manufacture, and build the aircraft, the emergency parachute, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts which were designed to protect the pilot so he would have a chance to survive the crash.  Continental failed to properly manufacture the aircraft engine and Continental's failure to design, manufacture, and build the aircraft engine.  The defective and unreasonably dangerous condition of the aircraft, aircraft engine, and their component parts proximately caused the aircraft engine to fail; the crash of the aircraft; and the excruciating painful injuries suffered by Glen Pace.

39.     The Cirrus aircraft, Continental aircraft engine, and their component parts, including but not limited to the Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts maintained inherently dangerous characteristics which are not generic aspects of the aircraft, aircraft engine, and their component parts which can be eliminated without substantially compromising the usefulness or desirability and which are not recognized by the ordinary person, including, but not limited to, Plaintiff, with ordinary knowledge common to the community.  The

aircraft, the aircraft engine, and their component parts, including but not limited to the Cirrus

emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe

inertial reel, Amsafe airbags, and their component parts were defective, because they failed to

have adequate warnings or instructions, and because Cirrus, Amsafe, and Continental knew, or in

the light of reasonably available knowledge knew, or should have known that the aircraft, the

aircraft engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe

shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts when they left

the control of the manufacturers and sellers, were in defective conditions.

40.     On the occasion in question, Plaintiff, did not have any knowledge of the

defective conditions of the aircraft, the aircraft engine, Cirrus emergency parachute, Cirrus

restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe

airbags, and their component parts; did not and could not have appreciated the danger of the

defective conditions; and did not deliberately or voluntarily expose himself to the dangerous

propensities of the aircraft, the aircraft engine, and their component parts.  The dangerous

propensities and characteristics of the Cirrus aircraft, Continental aircraft engine, Cirrus

emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe

inertial reel, Amsafe airbags, and their component parts were not known to the Plaintiff and were

not open and not obvious to him.  The Cirrus aircraft, Continental aircraft engine, Cirrus

emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe

inertial reel, Amsafe airbags, and their component parts were defective in design, because the

manufacturers and sellers knew, or in light of reasonably available knowledge or in the exercise

of reasonable care, should have known about the dangerous propensities of the aircraft, the

aircraft engine, and their component parts, including but not limited to the Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts designed to allow a pilot to survive a survivable crash without significant injury. Further, alternative feasible designs existed in other models that would have reasonably prevented the engine failure, the crash of the aircraft, the emergency parachute failure, restraint system failure, seatbelt failure, seatbelt harness failure, inertial reel failure, and the injuries to the Plaintiff. The alternate and feasible designs would have prevented the engine failure; the crash of the aircraft; the emergency parachute failure, restraint system failure, seatbelt failure, seatbelt harness failure, inertial reel failure, and the injuries and damages to Plaintiff, but would not have impaired the utility, usefulness, practicability, or desirability of the aircraft, aircraft engine, or their component parts.

41.     Cirrus, Amsafe, and Continental made specific representations to the owner of the aircraft and Glen Pace that the aircraft, aircraft engine, and their component parts were safe, not defective, and not unreasonably dangerous because Glen Pace relied upon the specific certifications and representations of the Cirrus aircraft, the Continental aircraft engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts and particularly those contained in sales brochures and log books. Plaintiff believed the representations made to him by Cirrus, Amsafe, and Continental, and relied upon those representations to his detriment by using the aircraft, aircraft engine, and their component parts using them as they were warranted and represented to him could be used and would prevent injury and damages to Plaintiff in a crash of the aircraft.

42.     Cirrus, Amsafe, and Continental made representations, advertisements, warranties that the aircraft, aircraft engine, and their component parts were safe, airworthy, not defective, and not unreasonably dangerous, although Cirrus, Amsafe, and Continental had in their possession, or should have had in their possession, information and factual information that the aircraft, aircraft engine, and their component parts contained inherent design flaws and defects which caused the aircraft engine to fail, which caused the crash of the aircraft, which caused the painful and excruciating injuries to the Plaintiff, and which caused the aircraft, the aircraft engine, and their component parts to be unreasonably dangerous and defective.

WHEREFORE, PREMISES CONSIDERED Plaintiff demands Judgment of and from the Defendants, Cirrus Design Corporation d/b/a Cirrus Aircraft Corporation; Continental Motor Corporation; Arapahoe Aero; Bravo Aviation; Charlie Aviation; Defendants, John Does I Through IV, and Defendants, XYZ Corporations I Through IV, for the damages sustained by Glen Pace in the amount of $4,500,000.00; punitive damages in an amount sufficient to deter the Defendants from such reckless and oppressive conduct in the future; prejudgment interest; post judgment interest; and all costs.

COUNT III

43.     Plaintiff, adopts by reference and realleges each and every allegation of all paragraphs of this Complaint the same as though specifically set out herein.

44.     Cirrus, Amsafe, and Continental impliedly warranted and represented by the sale, modification, and overhaul and rebuilding of the aircraft, aircraft engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts that the aircraft, aircraft engine, Cirrus

28

emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe

inertial reel, Amsafe airbags, and their component parts were of merchantable quality and fit for

the uses and purposes for which they were intended, manufactured, and sold.  Cirrus, Amsafe,

and Continental breached implied warranties as aforesaid, and as a proximate result thereof,

Plaintiff suffered damages and are entitled to compensation for their actual damages and punitive

damages in a sum sufficient to deter Defendants, Cirrus, Amsafe, and Continental, from such

oppressive and reckless conduct in the future.

     WHEREFORE, PREMISES CONSIDERED Plaintiff demands Judgment of and from the

Defendants, Cirrus Design Corporation d/b/a Cirrus Aircraft Corporation; Continental Motor

Corporation; Arapahoe Aero; Bravo Aviation; Charlie Aviation; Defendants, John Does I

Through IV, and Defendants, XYZ Corporations I Through IV, for the damages sustained by

Glen Pace in the amount of $4,500,000.00; punitive damages in an amount sufficient to deter the

Defendants from such reckless and oppressive conduct in the future; prejudgment interest; post

judgment interest; and all costs.

COUNT IV

    45.    Plaintiff adopts by reference and realleges each and every allegation of all

paragraphs of all counts of the Complaint the same as though specifically set out herein again.

    46.    Defendants, Cirrus, Amsafe, and Continental, were in the business of designing,

manufacturing, testing, processing, engineering, modifying, overhauling, inspecting, performing

factory overhauls and rebuilds, servicing, distributing, maintaining, installing, selling, and/or

delivering aircraft, aircraft engines, Cirrus emergency parachute, Cirrus restraint system, Amsafe

seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component

29

parts. The aircraft, aircraft engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe

seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component

parts were not reasonably safe for their intended purposes and uses and were defective and

unreasonably dangerous at the time they left the places of business of the manufacturers and

sellers and at the time of the crash on November 22, 2019.

47.    Plaintiff was unaware of the defective, unreasonably dangerous, and hazardous

conditions of the aircraft, the aircraft engine, and their component parts, including but not limited

to the Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe

seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component

parts which were  designed to allow a pilot to survive a survivable crash without significant

injury; was unaware of the unreasonably dangerous and hazardous conditions created by the

defective aircraft, the aircraft engine, Cirrus emergency parachute, Cirrus restraint system,

Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their

component parts and was unaware that the Defendants had failed to use technology to eliminate

or reduce the defective condition of the aircraft, aircraft engine, and their component parts. As a

result thereof, Cirrus, Amsafe, and Continental are strictly liable in tort for the failure of the

engine, the crash of the aircraft, and the excruciating pain and damages suffered by Glen Pace.

WHEREFORE, PREMISES CONSIDERED Plaintiff demands Judgment of and from the

Defendants, Cirrus Design Corporation d/b/a Cirrus Aircraft Corporation; Continental Motor

Corporation; Arapahoe Aero; Bravo Aviation; Charlie Aviation; Defendants, John Does I

Through IV, and Defendants, XYZ Corporations I Through IV, for the damages sustained by

Glen Pace in the amount of $4,500,000.00; punitive damages in an amount sufficient to deter the

Defendants from such reckless and oppressive conduct in the future; prejudgment interest; post judgment interest; and all costs.

## AD DAMNUM

WHEREFORE, PREMISES CONSIDERED Plaintiff demands Judgment of and from the Defendants, Cirrus Design Corporation d/b/a Cirrus Aircraft Corporation; Continental Motor Corporation; Arapahoe Aero; Bravo Aviation; Charlie Aviation; Defendants, John Does I Through IV, and Defendants, XYZ Corporations I Through IV, for the damages sustained by Glen Pace in the amount of $4,500,000.00; punitive damages in an amount sufficient to deter the Defendants from such reckless and oppressive conduct in the future; prejudgment interest; post judgment interest; and all costs.

Respectfully submitted, this the _18TH_ day of _NOVEMBER_, 2021.

PLAINTIFF

By: _____

WAYNE E. FERRELL, JR.

OF COUNSEL:

WAYNE E. FERRELL, JR.
Mississippi Bar No. 5182
Attorney at Law
Law Offices of Wayne E. Ferrell, Jr., PLLC
405 Tombigbee Street
Post Office Box 24448
Jackson, Mississippi 39225-4448
(601) 969-4700

31

**COVER SHEET**
**Civil Case Filing Form**
*(To be completed by Attorney/Party*
*Prior to Filing of Pleading)*

Mississippi Supreme Court          Form AOC/01
Administrative Office of Courts          (Rev 2009)

| Court Identification Docket # | Case Year | Docket Number |
|---|---|---|
| | 2021 | 304AM |

County # | Judicial District | Court ID (CH, Cir, CO) | | Local Docket ID

Month | Date | Year — This area to be completed by clerk | Case Number if filed prior to 1/1/94

In the **CIRCUIT** ___ Court of ___ **MARION** ___ County — ___ Judicial District

**Origin of Suit** (Place an "X" in one box only)
- [XX] Initial Filing
- [ ] Reinstated
- [ ] Foreign Judgment Enrolled
- [ ] Transfer from Other court
- [ ] Other
- [ ] Remanded
- [ ] Reopened
- [ ] Joining Suit/Action
- [ ] Appeal

**Plaintiff - Party(ies) Initially Bringing Suit Should Be Entered First - Enter Additional Plaintiffs on Separate Form**

Individual   **PACE** ___ **GLEN** ___
_____ Last Name _____ First Name _____ Maiden Name, if applicable _____ M.I. _____ Jr/Sr/III/IV

___ Check ( x ) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
Estate of ___

___ Check ( x ) if Individual Plaintiff is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity
D/B/A or Agency ___

Business ___
Enter legal name of business, corporation, partnership, agency - If Corporation, indicate the state where incorporated
___ Check ( x ) if Business Plaintiff is filing suit in the name of an entity other than the above, and enter below:
D/B/A ___

Address of Plaintiff ___ 405 TOMBIGBEE ST., JACKSON, MS 39201

Attorney (Name and Address) ___ WAYNE E. FERRELL, JR., 405 TOMBIGBEE ST., JACKSON, MS 39201 ___ MS Bar No. 5182

___ Check ( x ) if Individual Filing Initial Pleadings NOT an Attorney ___
Signature of Individual Filing: ___

**Defendant - Name of Defendant - Enter Additional Defendants on Separate Form**

Individual ___

_____ Last Name _____ First Name _____ Maiden Name, if applicable _____ M.I. _____ Jr/Sr/III/IV

___ Check ( x ) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
Estate of ___

___ Check ( x ) if Individual Defendant is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity:
D/B/A or Agency ___

Business   **CIRRUS DESIGN CORPORATION D/B/A CIRRUS AIRCRAFT CORPORATION** ___
Enter legal name of business, corporation, partnership, agency - If Corporation, indicate the state where incorporated
___ Check ( x ) if Business Defendant is acting in the name of an entity other than the above, and enter below:
D/B/A ___

Attorney (Name & Address) - If Known ___ MS Bar No. ___

F I L E D
NOV 1 9 2021
JANETTE NOLAN, CIRCUIT CLERK
BY _____ D.C.

**Damages Sought:** Compensatory $ ___ Punitive $ ___ Check ( x ) if child support is contemplated as an issue in this suit.*
*If checked, please submit completed Child Support Information Sheet with this Cover Sheet

**Nature of Suit** (Place an "X" in one box only)

| Domestic Relations | Business/Commercial | Children/Minors - Non-Domestic | Real Property |
|---|---|---|---|
| [ ] Child Custody/Visitation | [ ] Accounting (Business) | [ ] Adoption - Contested | [ ] Adverse Possession |
| [ ] Child Support | [ ] Business Dissolution | [ ] Adoption - Uncontested | [ ] Ejectment |
| [ ] Contempt | [ ] Debt Collection | [ ] Consent to Abortion Minor | [ ] Eminent Domain |
| [ ] Divorce: Fault | [ ] Employment | [ ] Removal of Minority | [ ] Eviction |
| [ ] Divorce: Irreconcilable Diff. | [ ] Foreign Judgment | [ ] Other ___ | [ ] Judicial Foreclosure |
| [ ] Domestic Abuse | [ ] Garnishment | **Civil Rights** | [ ] Lien Assertion |
| [ ] Emancipation | [ ] Replevin | [ ] Elections | [ ] Partition |
| [ ] Modification | [ ] Other ___ | [ ] Expungement | [ ] Tax Sale: Confirm/Cancel |
| [ ] Paternity | **Probate** | [ ] Habeas Corpus | [ ] Title Boundary or Easement |
| [ ] Property Division | [ ] Accounting (Probate) | [ ] Post Conviction Relief/Prisoner | [ ] Other ___ |
| [ ] Separate Maintenance | [ ] Birth Certificate Correction | [ ] Other ___ | **Torts** |
| [ ] Termination of Parental Rights | [ ] Commitment | **Contract** | [ ] Bad Faith |
| [ ] UIFSA (eff 7/1/97; formerly URESA) | [ ] Conservatorship | [ ] Breach of Contract | [ ] Fraud |
| [ ] Other ___ | [ ] Guardianship | [ ] Installment Contract | [ ] Loss of Consortium |
| **Appeals** | [ ] Heirship | [ ] Insurance | [ ] Malpractice - Legal |
| [ ] Administrative Agency | [ ] Intestate Estate | [ ] Specific Performance | [ ] Malpractice - Medical |
| [ ] County Court | [ ] Minor's Settlement | [ ] Other ___ | [ ] Mass Tort |
| [ ] Hardship Petition (Driver License) | [ ] Muniment of Title | **Statutes/Rules** | [ ] Negligence - General |
| [ ] Justice Court | [ ] Name Change | [ ] Bond Validation | [ ] Negligence - Motor Vehicle |
| [ ] MS Dept Employment Security | [ ] Testate Estate | [ ] Civil Forfeiture | [ ] Product Liability |
| [ ] Worker's Compensation | [ ] Will Contest | [ ] Declaratory Judgment | [ ] Subrogation |
| [ ] Other ___ | [ ] Other ___ | [ ] Injunction or Restraining Order | [ ] Wrongful Death |
| | | [ ] Other ___ | [X] Other ___ |

IN THE _Circuit_ COURT OF _Marion_ COUNTY, MISSISSIPPI
_15th_ JUDICIAL DISTRICT, CITY OF _Columbia_

Docket No. _21_ - _304_ _AM_
File Yr / Chronological No. / Clerk's Local ID

Docket No. If Filed
Prior to 1/1/94 _____

### DEFENDANTS IN REFERENCED CAUSE - Page 1 of ___ Defendants Pages
### IN ADDITION TO DEFENDANT SHOWN ON CIVIL CASE FILING FORM COVER SHEET

**Defendant #2:**

**Individual:** _____ ( _____ ) _____ _____
Last Name / First Name / Maiden Name, if Applicable / Middle Init. / Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

**Business** **CONTINENTAL MOTOR CORPORATION** _____
Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

D/B/A _____

**ATTORNEY FOR THIS DEFENDANT:** _____ Bar # or Name: _____ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

**Defendant #3:**

**Individual:** _____ ( _____ ) _____ _____
Last Name / First Name / Maiden Name, if Applicable / Middle Init. / Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

**Business** **AMSAFE** _____
Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

D/B/A _____

**ATTORNEY FOR THIS DEFENDANT:** _____ Bar # or Name: _____ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

**Defendant #4:**

**Individual:** _____ ( _____ ) _____ _____
Last Name / First Name / Maiden Name, if Applicable / Middle Init. / Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

**Business** **ARAPAHOE AERO** _____
Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

D/B/A _____

**ATTORNEY FOR THIS DEFENDANT:** _____ Bar # or Name: _____ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

IN THE _Circuit_ COURT OF _Marion_ COUNTY, MISSISSIPPI

_15th_ JUDICIAL DISTRICT, CITY OF _Columbia_

Docket No. _21_ - _304_ _AM_

| File Yr | Chronological No. | Clerk's Local ID |

Docket No. If Filed Prior to 1/1/94 _____

### DEFENDANTS IN REFERENCED CAUSE - Page __ of __ Defendants Pages
### IN ADDITION TO DEFENDANT SHOWN ON CIVIL CASE FILING FORM COVER SHEET

**Defendant # ___ :**

**Individual:** _____  _____  ( _____ ) _____ _____

Last Name          First Name          Maiden Name, if Applicable          Middle Init.          Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

**Business** **BRAVO AVIATION (FICTITIOUS DEFENDANT)**

Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

D/B/A _____

**ATTORNEY FOR THIS DEFENDANT:** _____ Bar # or Name: _____ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

**Defendant # ___ :**

**Individual:** _____  _____  ( _____ ) _____ _____

Last Name          First Name          Maiden Name, if Applicable          Middle Init.          Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

**Business** **CHARLIE AVIATION (FICTITOUS DEFENDANT)**

Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

D/B/A _____

**ATTORNEY FOR THIS DEFENDANT:** _____ Bar # or Name: _____ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

**Defendant # ___ :**

**Individual:** _____  _____  ( _____ ) _____ _____

Last Name          First Name          Maiden Name, if Applicable          Middle Init.          Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

**Business** _____

Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

D/B/A _____

**ATTORNEY FOR THIS DEFENDANT:** _____ Bar # or Name: _____ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

# LAW OFFICES OF

# WAYNE E. FERRELL, JR., PLLC

POST OFFICE BOX 24448
405 TOMBIGBEE STREET
JACKSON, MISSISSIPPI 39225-4448
Telephone: 601.969.4700
Fax: 601.969.7514

| WEB PAGE | MASTER OF LAWS, L.L.M. | EMAIL: |
| www.airlawonline.com | AVIATION & SPACE LAW | wferrell@airlawonline.com |

November 18, 2021

F I L E D
NOV 1 9 2021
JANETTE NOLAN, CIRCUIT CLERK
BY _____ D.C.

VIA FEDERAL EXPRESS
Janette Nolan,
Circuit Clerk Marion County
250 Broad St., Ste 1
Columbia, MS 39429

Re:   Glen Pace v. Cirrus, et al; Circuit Court of Marion County, MS

Dear Ms. Nolan:

Please find enclosed the following:

1.   Civil Cover Sheet;
2.   Check for $161.00;
3.   Original and one copy of Complaint
4.   Three Summonses for each Defendant

Please file the original Complaint; "file" stamp the copy of the Complaint; and issue the Summonses. Also enclosed is a self-addressed, stamped envelope for your convenience in returning the file stamped Complaint and the Summonses.

Thank you for your assistance with this matter. If you have any questions or need any further information, please feel free to contact us.

Sincerely,

Wayne E. Ferrell, Jr.

WEFjr/dc