IN THE CIRCUIT COURT OF MARION COUNTY, MISSISSIPPI

GLEN PACE                                                                    PLAINTIFF

V.                                                                 NO. 21-cv-304 AM

CIRRUS DESIGN CORPORATION, individually
and d/b/a CIRRUS AIRCRAFT CORPORATION;
CONTINENTAL MOTOR CORPORATION;
AMSAFE;
ARAPAHOE AERO;
PERFORMANCE AVIATION, LLC;
WADE WALTERS, Individually,
d/b/a PERFORMANCE AVIATION, LLC,
and a member of PERFORMANCE AVIATION, LLC;
CHARLIE AVIATION (fictitious Defendant);
DEFENDANTS, JOHN DOES I THROUGH IV (fictitious Defendants);
DEFENDANTS, XYZ CORPORATIONS
I THROUGH IV (fictitious Defendants)                                         DEFENDANTS

## AMENDED COMPLAINT
### Jury Trial Requested

Plaintiff, Glen Pace, by and through his attorney of record, files this his Amended

Complaint against Defendants, Cirrus Design Corporation, individually and d/b/a Cirrus Aircraft

Corporation; Continental Motor Corporation; Amsafe; Arapahoe Aero; Performance Aviation,

LLC; Wade Walters, Individually, d/b/a Performance Aviation, LLC, and a member of

Performance Aviation, LLC; Charlie Aviation (fictitious Defendant); Defendants, John Does I

Through IV (fictitious Defendants), and Defendants, XYZ Corporations I Through IV (fictitious

Defendants), and in support thereof would show unto the Court the following:

### PARTIES

1.      Plaintiff, Glen Pace, is an adult resident citizen of Marion County, Mississippi,

and his address is 202 E. Reservoir Road, Columbia, Mississippi 39429.

2.      Defendant, Cirrus Design Corporation, individually and d/b/a Cirrus Aircraft

Corporation, (hereinafter referred to as "Cirrus") is a corporation organized and existing under

and by virtue of the laws of a state other than the State of Mississippi.  Cirrus designs,

manufactures, and sells Cirrus aircraft and aircraft parts; and Cirrus services, repairs, annuals,

overhauls, and rebuilds Cirrus aircraft.  Cirrus is doing business in the State of Mississippi and

has its principal place of business located at 4515 Taylor Circle, Duluth, Minnesota 55811.

Cirrus is doing business in the State of Mississippi by virtue of the fact that it has committed a

tort, in whole or in part, in the State of Mississippi, and by virtue of the fact that it has entered

into a contract with a resident of the State of Mississippi, to be enforced in whole or in part in the

State of Mississippi, and as a result thereof, Cirrus is doing business in the State of Mississippi.

Further, Cirrus is selling Cirrus aircraft, Cirrus aircraft parts, and other aviation products in the

State of Mississippi; advertises its products in the State of Mississippi through various aviation

related magazines which are distributed in the State of Mississippi; is engaged in business and

has substantial contacts with the State of Mississippi; and purposely directs its sales activity and

sales promotions in Mississippi to Mississippi residents. Cirrus directed its business towards

Mississippi residents; and has purposely availed itself of doing business in the State of

Mississippi by selling and delivering the crashed aircraft N969JM (when new) directly to a

Mississippi entity, Performance Aviation, LLC and Mississippi resident, Wade Walters.  A copy

of the Application for U.S. Airworthy Certificate is attached hereto as Exhibit "A" and

incorporated herein by reference; a copy of the Standard Airworthiness Certificate is attached

hereto as Exhibit "B" and incorporated herein by reference; a copy of the Aircraft Registration

Application is attached hereto as Exhibit "C" and incorporated herein by reference; a copy of the

2

Aircraft Bill of Sale to Performance Aviation, PLLC, is attached hereto as Exhibit "D" and incorporated herein by reference; and a copy of the Aircraft Security Agreement is attached hereto as Exhibit "E" and incorporated herein by reference.  Cirrus may be served with process of this Court pursuant to the Mississippi Rules of Civil Procedure.

      3.     Defendant, Continental Motor Corporation, is a corporation organized and existing under and by virtue of the laws of a state other than the State of Mississippi but is doing business in the State of Mississippi.  Continental Motor Corporation has its principal place of business located at 8600 County Road, Fairhope, Alabama 36532.  Continental Motor Corporation designs, manufactures, and sells aircraft engines; and Continental Motor Corporation services, repairs, annuals, overhauls, and rebuilds  Continental Motor Corporation engines. Continental Motor Corporation is doing business in the State of Mississippi by virtue of the fact that it has committed a tort, in whole or in part, in the State of Mississippi, and by virtue of the fact that it has entered into a contract with a resident of the State of Mississippi, to be enforced in whole or in part in the State of Mississippi, and as a result thereof,  Continental Motor Corporation is doing business in the State of Mississippi.  Further,  Continental Motor Corporation is selling  Continental Motor Corporation aircraft,  Continental Motor Corporation aircraft parts, and other aviation products in the State of Mississippi; advertises its products in the State of Mississippi through various aviation related magazines which are distributed in the State of Mississippi; is engaged in business and has substantial contacts with the State of Mississippi; and purposely directs its sales activity and sales promotions in Mississippi to Mississippi residents.  Continental Motor Corporation directed its business towards Mississippi residents; and has purposely availed itself of doing business in the State of Mississippi. Further,

Continental Motor Corporation is engaged in business and has substantial contacts in the State of Mississippi and is selling Continental engines, Continental engine parts, and other aviation products in the State of Mississippi; advertised its products in the State of Mississippi through various aviation related magazines which are distributed in the State of Mississippi; is engaged in business and has substantial contacts with the State of Mississippi; and purposely directs its sales activity and sales promotions in Mississippi to  Mississippi residents; directed its business towards Mississippi residents; and has purposely availed itself of doing business in the State of Mississippi.  Continental Motor Corporation sold and serviced the Continental engine in the crashed aircraft, N969JM, (when new) directly or indirectly to a Mississippi entity, Performance Aviation, LLC, and Mississippi resident, Wade Walters.  A copy of the Application for U.S. Airworthy Certificate is attached hereto as Exhibit "A" and incorporated herein by reference; a copy of the Standard Airworthiness Certificate is attached hereto as Exhibit "B" and incorporated herein by reference; a copy of the Aircraft Registration Application is attached hereto as Exhibit "C" and incorporated herein by reference; a copy of the Aircraft Bill of Sale to Performance Aviation, PLLC, is attached hereto as Exhibit "D" and incorporated herein by reference; and a copy of the Aircraft Security Agreement is attached hereto as Exhibit "E" and incorporated herein by reference.  Continental Motor Corporation may be served with process of this Court pursuant to the Mississippi Rules of Civil Procedure.

4.     Continental Motor Corporation designed, manufactured, overhauled, and sold the Continental engine for the subject aircraft to Performance Aviation, LLC, and Wade Walters to be used by the owner of the aircraft and Glen Pace in the State of Mississippi.

5.       Defendant, Amsafe, is a corporation organized and existing under and by virtue of the laws of a state other than the State of Mississippi, but Amsafe is doing business in the State of Mississippi. Amsafe has its principal place of business located at 1043 N. 47th Avenue, Phoenix, Arizona 85043. Amsafe designs, manufactures, and sells Amsafe products, and Amsafe services, repairs, overhauls, rebuilds Amsafe seatbelts, shoulder harnesses, seatbelt components, restraint systems, inertial reels, their component parts, and other aviation products. Amsafe is doing business in the State of Mississippi by virtue of the fact that it has committed a tort, in whole or in part, in the State of Mississippi, and as a result thereof, Amsafe is doing business in the State of Mississippi. Amsafe is doing business in the State of Mississippi by virtue of the fact that it has committed a tort, in whole or in part, in the State of Mississippi, and by virtue of the fact that it has entered into a contract with a resident of the State of Mississippi, to be enforced in whole or in part in the State of Mississippi, and as a result thereof, Amsafe is doing business in the State of Mississippi. Further, Amsafe is engaged in business in the State of Mississippi, has substantial contacts in the State of Mississippi, and is selling seatbelts, shoulder harnesses, seatbelt components, restraint systems, the inertial reels, their component parts, and other aviation products in the State of Mississippi; advertises its products in the State of Mississippi through various aviation related magazines which are distributed in the State of Mississippi; is engaged in business in Mississippi, and has substantial contacts with the State of Mississippi. Amsafe purposely directs its sales activity and sales promotions in Mississippi to Mississippi residents, Amsafe directed its business towards Mississippi residents, and has purposely availed itself of doing business in the State of Mississippi. Amsafe sold and serviced the Amsafe seatbelts, shoulder harnesses, seatbelt components, restraint systems, inertial reels,

their component parts in the crashed aircraft (when new) to a Mississippi entity. Amsafe may be served with process of this Court pursuant to the Mississippi Rules of Civil Procedure.

6.     Amsafe designed, manufactured, overhauled, inspected, certified, sold, and maintained the Amsafe seatbelts, shoulder harnesses, seatbelt components, restraint systems, and the inertial reels, for the subject aircraft to Performance Aviation, LLC, and Wade Walters to be used by the owner of the aircraft and Glen Pace in the State of Mississippi.

7.     Defendant, Arapahoe Aero, is a corporation organized and existing under and by virtue of the laws of a state other than the State of Mississippi but is doing business in the State of Mississippi. Arapahoe Aero has its principal place of business located at 12760 East Control Tower Road, Englewood, Colorado, and holds itself out to the public as a company offering engine overhauls, engine rebuilds, and repairs to owners and pilots flying Cirrus aircraft including, but not limited to, the owner of the Cirrus aircraft in question, and Glen Pace, (the pilot of the aircraft). Arapahoe Aero is engaged in business and has substantial contracts with the State of Mississippi, and therefore has purposely directed its aviation services and products in the State of Mississippi; advertised its products in Mississippi through various aviation related magazines which are distributed in the State of Mississippi; and is engaged in business and has substantial contacts with the State of Mississippi. Arapahoe Aero has purposely directed its sales activity and sales promotions with Mississippi residents and directed its business towards Mississippi residents and has purposely availed itself of doing business in the State of Mississippi. Arapahoe Aero entered into a contract with a resident of the State of Mississippi to be performed in whole or in part in the State of Mississippi and committed a tort in whole or in part in the State of Mississippi against a resident of the State of Mississippi, and as a result

6

thereof is doing business in the State of Mississippi. Arapahoe Aero may be served with process of this Court pursuant to the Mississippi Rules of Civil Procedure.

8.     Defendant, Performance Aviation, LLC, is a limited liability corporation which is organized and existing under and by virtue of the laws of the State of Mississippi. Further, for purposes of the citizenship, Performance Aviation, LLC's sole member is Wade Walters, who is a resident of the State of Mississippi. Performance Aviation, LLC, is not only a limited liability corporation which is organized and existing under and by virtue of the laws of the State of Mississippi, but has the residency of its owner, Wade Walters, who is an adult resident citizen of Hattiesburg, Forrest County, Mississippi. Defendant, Performance Aviation, LLC, is doing business in the State of Mississippi and has its principal place of business located at 104 Bocage Court, Hattiesburg, Mississippi 39402. Performance Aviation, LLC, sold the Cirrus aircraft, Continental engine, Amsafe seatbelts, shoulder harnesses, seatbelt components, restraint systems, and inertial reels to Martin Aviation, LLC. A copy of the Aircraft Bill of Sale is attached hereto as Exhibit "F" and incorporated herein by reference. Performance Aviation, LLC, breached the Aircraft Bill of Sale by selling Martin Aviation, LLC, an aircraft, aircraft engine, and their component parts in an unairworthy condition. Performance Aviation, LLC, and Wade Walters breached their contract with Martin Aviation, since Performance Aviation, LLC, and Wade Walters represented to Martin Aviation that the aircraft was in like new and airworthy condition. The Cirrus aircraft, the Continental aircraft engine, and their component parts were not airworthy and were in a defective and unreasonably dangerous condition. Performance Aviation, LLC, and Wade Walters were the prior owners of the aircraft and responsible for the maintenance and inspection of the aircraft, the aircraft engine, and the aircraft component parts, including but not

limited to the Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe

shoulder harness, Amsafe airbag, Amsafe inertial reel, and their component parts, while

Performance Aviation, LLC, and Wade Walters owned and operated the aircraft. Performance

Aviation, LLC, and Wade Walters were responsible for the repair, maintenance, inspection, and

certification of the aircraft, the aircraft engine, the aircraft and aircraft engine component parts,

including but not limited to the Cirrus emergency parachute, Cirrus restraint system, Amsafe

seatbelt, Amsafe shoulder harness, Amsafe airbag, Amsafe inertial reel, and their component

parts (designed to allow the pilot to survive a survivable crash without significant injuries) as

airworthy. Performance Aviation, LLC, and Wade Walters, when they were the owners and

operators of the aircraft, aircraft engine, their component parts, Cirrus emergency parachute,

Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe airbag, Amsafe

inertial reel, and their component parts, were negligent in the maintenance, repair, inspection,

certification of the aircraft, aircraft engine, their component parts, including but not limited to the

Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness,

Amsafe airbag, Amsafe inertial reel, and their component parts. Performance Aviation, LLC's

and Wade Walters's negligence were contributing proximate causes of the engine failure and

crash of the aircraft and injuries to Glen Pace on November 22, 2019. Performance Aviation,

LLC, may be served with process of this Court by serving Wade Walters at his address of 104

Bocage Court, Hattiesburg, Mississippi 39402 (or FCI Low, 846 NE 54th Terrace, Sumterville,

FL 33521).

9.     Defendant, Wade Walters, individually, d/b/a Performance Aviation, LLC, and as

a member of Performance Aviation, LLC, is an individual who resides in the State of Mississippi

and is the sole member of Performance Aviation, LLC. Wade Walters is the manager of

Performance Aviation, LLC, and is a member of Performance Aviation, LLC, which is organized

and existing under and by virtue of the laws of the State of Mississippi. Defendant, Wade

Walters, individually, d/b/a Performance Aviation, LLC, and as a member of Performance

Aviation, LLC, is doing business in the State of Mississippi and has a principal place of business

located at 104 Bocage Court, Hattiesburg, Mississippi 39402. Performance Aviation, LLC, and

Wade Walters sold the Cirrus aircraft, Continental engine, Amsafe seatbelts, shoulder harnesses,

seatbelt components, restraint systems, and inertial reels to Martin Aviation, LLC. A copy of the

Aircraft Bill of Sale from Performance Aircraft, LLC, to Martin Aviation is attached hereto as

Exhibit "F" and incorporated herein by reference. Performance Aviation, LLC, breached the

Aircraft Bill of Sale by selling Martin Aviation, LLC, an aircraft, aircraft engine, and their

component parts in an unairworthy condition. Performance Aviation, LLC, and Wade Walters

breached their contract with Martin Aviation, since Performance Aviation, LLC, and Wade

Walters falsely represented to Martin Aviation and Glen Pace that the aircraft was in like new

and airworthy condition. Performance Aviation, LLC, and Wade Walters caused the Cirrus

aircraft, the Continental aircraft engine, and their component parts to be unairworthy and to be in

a defective and unreasonably dangerous condition. Wade Walters, individually, d/b/a

Performance Aviation, LLC, and as a member of Performance Aviation, LLC, were the prior

owners of the aircraft and responsible for the maintenance and inspection of the aircraft, the

aircraft engine, the aircraft and aircraft engine component parts, including but not limited to the

Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness,

Amsafe airbag, Amsafe inertial reel, and their component parts (designed to allow the pilot to

survive a survivable crash without significant injuries) and represented the Amsafe seatbelt,
Amsafe shoulder harness, Amsafe airbag, Amsafe inertial reel, and their component parts as
airworthy, when the truth of the matter is that the Amsafe seatbelt, Amsafe shoulder harness,
Amsafe airbag, Amsafe inertial reel, and their component parts were not airworthy.  Wade
Walters, individually, d/b/a Performance Aviation, LLC, and as a member of Performance
Aviation, LLC, when he and Performance Aviation, LLC, were the owners and operators of the
aircraft, aircraft engine, their component parts, Cirrus emergency parachute, Cirrus restraint
system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe airbag, Amsafe inertial reel, and their
component parts, were negligent in the maintenance, repair, inspection, certification of the
aircraft, aircraft engine, their component parts including, but not limited to, the Cirrus emergency
parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe airbag,
Amsafe inertial reel, and their component parts.  Wade Walters', individually, d/b/a Performance
Aviation, LLC, and as a member of Performance Aviation, LLC, and Performance Aviation,
LLC's negligence and breach of contract were contributing proximate causes of the engine failure
and crash of the aircraft and injuries to Glen Pace on November 22, 2019.

10.     Wade Walters (individually, d/b/a Performance Aviation, LLC, and as a member
of Performance Aviation, LL) is an adult resident citizen of Forrest County, Mississippi, and may
be served with process of this Court by serving Wade Walters at 104 Bocage Court, Hattiesburg,
Mississippi 39402 (or FCI Low, 846 NE 54th Terrace, Sumterville, FL 33521) and by serving
Warden Kathy Lane, FCI Low, 846 NE 54th Terrace, Sumterville, FL 33521.

11.     Defendants, Performance Aviation, LLC, and Wade Walters, (individually, d/b/a
Performance Aviation, LLC), were doing business as Performance Aviation, LLC, are substituted

for the fictitious Defendant, Bravo Aviation, which is described in paragraph 8 of the original

Complaint.

12.    Defendant, Charlie Aviation (fictitious Defendant), is a corporation organized and

existing under and by virtue of the laws of a state other than the State of Mississippi but is doing

business in the State of Mississippi.  The true name of fictitious Defendant, Charlie Aviation,

will be substituted once its identity is known.  Charlie Aviation holds itself out to the public as an

individual or company offering engine overhaul, engine rebuilds, and repair to owners and pilots

flying Cirrus aircraft including, but not limited to, the owner of the aircraft in question, and Glen

Pace (the pilot of the aircraft); is engaged in business and has substantial contracts in the State of

Mississippi; has purposely directed its aviation services to residents of the State of Mississippi;

advertised its products in Mississippi through various aviation related magazines, which are

distributed in the State of Mississippi; has purposely directed its sales activity and sales

promotions with Mississippi residents; directed its business towards Mississippi residents and

has purposely availed itself of doing business in the State of Mississippi.  Charlie Aviation may

be served with process of this Court pursuant to the Mississippi Rules of Civil Procedure.

Charlie Aviation also entered into a contract with a resident of the State of Mississippi to be

performed in whole or in part in the State of Mississippi and as a result thereof is doing business

in the State of Mississippi.

13.    Defendants, John Does I through IV, are corporations, entities, partnerships,

limited partnerships, limited liability companies, or individuals whose true identities and

addresses are unknown at this time, but who may be liable to the Plaintiff.  Plaintiff will amend

his Complaint to substitute the unknown Defendants and fictitious Defendants once the identities

11

of John Does I through IV are learned and once their liabilities are made known to the Plaintiff.

Defendants, John Does I through IV, are unknown Defendants, who repaired, maintained,

inspected, manufactured, designed, certified, overhauled, rebuilt, and/or sold the Cirrus Aircraft,

the Continental engine, and/or their component parts or otherwise distributed or placed the

aircraft, aircraft engine, and/or their component parts into the stream of commerce in the State of

Mississippi, and/or caused or substantially contributed to the engine failure, the subsequent crash

of the aircraft, and the injuries and damages to the Plaintiff.  Defendants, John Does I through IV,

may be served with process of this Court pursuant to the Mississippi Rules of Civil Procedure.

14.     Defendants, XYZ Corporations I through IV, are corporations, entities,

partnerships, limited partnerships, limited liability companies, or individuals whose true

identities and addresses are unknown at this time, but who may be liable to the Plaintiff in this

cause of action.  Plaintiff will amend his Complaint to substitute the unknown Defendants and

fictitious Defendants once the identities of XYZ Corporations I through IV are learned and once

their liabilities are made known to the Plaintiff.  Defendants, XYZ Corporations I through IV, are

unknown Defendants, who may have or have had interests of ownership, control, management,

employment, and/or agency with the Defendants in this cause, and who may be liable to Plaintiff

in the premises for their negligent acts and/or omissions. Defendants, XYZ Corporations I

through IV, may be served with process of this Court pursuant to the Mississippi Rules of Civil

Procedure.

15.     On November 22, 2019, the Cirrus Aircraft SR22, FAA registration number

N969JM, was on a routine flight from Dallas, Texas, to Hattiesburg, Mississippi, with stops in

Terrell, Texas, and Gladewater, Texas.  The aircraft departed the airport in Dallas, Texas; flew to

12

Terrell, Texas; and landed there.  Glen Pace was the sole pilot and pilot in command of the

aircraft.  Glen Pace later departed Terrell, Texas, and flew the aircraft on its most direct route of

flight toward Tyler, Texas.  The engine began shaking, so Glen Pace became concerned and

consulted the engine checklist. The engine ultimately returned to normal.  Glen Pace continued

flying the aircraft for a few minutes and started on his cruise checklist, when the gauge on his

number five cylinder went red.  The two middle gauges blanked out but then returned.  Glen Pace

checked his manifold pressure, which indicated about 28.5, and he realized the engine was not

functioning at full power.  Glen Pace could not make the aircraft maintain altitude and the

aircraft began descending.  Glen Pace radioed air traffic control that he was having engine

problems, and he requested vectors to the nearest airport.  Air traffic control gave Glen Pace two

options, but neither of the airports had IFR approaches. Air traffic control subsequently gave

Glen Pace two options for emergency landings and both had IFR approaches.  The engine seemed

to operate normally, and Glen Pace began a small climb of about 200 feet per minute.  Glen Pace

leveled his aircraft at approximately 2,400 feet when he was transferred to Longview approach.

Glen Pace flew the aircraft for a few minutes, and then the engine began to shake again, Glen

Pace declared an emergency and asked for vectors to the final approach fix for KTYR, since he

was about six miles away.  The controller acknowledged the emergency and gave Glen Pace

vectors and cleared Glen Pace for the approach. While flying the aircraft for the approach, the oil

pressure in the engine dropped well below the normal range. Glen Pace could not make the

aircraft hold its altitude, and the aircraft began descending.  Glen Pace notified air traffic control

that he was going to pull the emergency chute. The aircraft continued to descend, and Glen Pace

notified the air traffic controller that he was pulling the emergency chute when he reached 1,000

feet. Glen Pace navigated around some obstacles, reduced the power, and selected high boost in case he was having a fuel issue. Once Glen Pace reached 1,450 feet (or 900 feet above the ground) he observed a few trees through broken clouds. Glen Pace, once he reached about 700 feet above ground (at the base of the clouds), turned the aircraft toward a field on his right. Glen Pace lowered the nose of the aircraft to prevent a stall, entered the field, attempted to avoid a fence and tower in the field, and deployed the emergency chute. The Cirrus emergency parachute, Amsafe restraint system, Amsafe shoulder harness, Amsafe seatbelts, Amsafe airbags, Amsafe inertial reel, and their component parts failed causing the aircraft to crash and causing injuries to Glen Pace including, but not limited to, hitting his head on the dash, rendering him unconscious. The Cirrus emergency parachute, Amsafe restraint system, Amsafe shoulder harness, Amsafe seatbelts, Amsafe airbags, Amsafe inertial reel, and their component parts did not function as advertised. Further, prior to and on impact the Cirrus emergency parachute, Amsafe restraint system, Amsafe shoulder harness, Amsafe seatbelts, Amsafe airbags, Amsafe inertial reel, and their component parts failed, causing additional injuries to Glen Pace.

16.     The aircraft crashed in Smith County, Tyler, Texas, as a result of the combined negligence of Cirrus; Continental Motor Corporation; Arapahoe Aero; Amsafe; Performance Aviation; Wade Walters (Individually, d/b/a Performance Aviation, and doing business as a member of Performance Aviation); Charlie Aviation; Defendants, John Does I Through IV; and Defendants, XYZ Corporations I Through IV.

17.     On all relevant occasions, the Defendants were acting in concert with each other and as such were and are agents for each other and liable for each others actions, conduct, errors and omissions pursuant to the laws of Master/Servant, Principal/Agent, Employer/Employee, and

*respondeat superior*.  Defendants were acting in the furtherance of each others' business or

interests and as such are responsible and liable for each others' actions, conduct and/or

omissions.  Plaintiff would further show unto the Court that the Defendants (by and through their

actions, conduct, and/or omissions, in joint concert and course of dealings with each other)

caused unreasonably dangerous conditions to exist and caused the damages of the Plaintiff.

<div align="center">COUNT I</div>

18.    Plaintiff adopts by reference and realleges each and every allegation of all

paragraphs of all counts of the Amended Complaint the same as though specifically set out

herein again.

19.    On November 22, 2019, Glen Pace, at the time of the flight in question and at the

time of the crash, was the pilot in command of the Cirrus aircraft as it proceeded on a planned

flight from Dallas, Texas, to Hattiesburg, Mississippi, with stops in Terrell, Texas, and

Gladewater, Texas.  On the occasion in question, the aircraft engine that was manufactured by

Continental Motor Corporation; and serviced, repaired, and inspected by Arapahoe Aero failed.

Glen Pace made the decision to descend and engage the emergency parachute that was

manufactured by Cirrus or Amsafe and was installed in the Cirrus aircraft.  Glen Pace made the

decision to descend to an altitude below the clouds to engage the emergency parachute that was

manufactured by Cirrus and installed in the Cirrus aircraft for use when there was an engine

failure. The aircraft descended through the clouds, and when the aircraft descended through 1000

feet, Glen Pace engaged the emergency parachute after he steered the aircraft toward an empty

field.  The Cirrus aircraft emergency parachute did not operate as advertised and as represented

to Glen Pace and failed and caused the aircraft to crash into the ground.  The Cirrus restraint

<div align="center">15</div>

system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, and their component parts which were designed, manufactured, installed, inspected, and maintained by Cirrus and Amsafe to permit the pilot to survive a survivable crash, failed before and on impact. The Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, and their component parts failed and caused substantial injuries and damages to Glen Pace.

20.     On the occasion in question, the Cirrus aircraft and Continental engine experienced power failure and caused the aircraft to crash, contributing to the cause of Glen Pace's injuries.

21.     On or about November 22, 2019, the Cirrus Aircraft SR22, FAA registration number N969JM, Continental engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were manufactured, designed, and sold by Cirrus, Amsafe, and Continental. The Defendants, Cirrus, Amsafe, and Continental, controlled the maintenance of the aircraft by requiring that the Cirrus aircraft and Continental engine be overhauled and rebuilt at the direction of Cirrus and Continental. Cirrus and Continental further maintained control by requiring periodic maintenance inspections on the aircraft, the aircraft engine, and the aircraft component parts; by requiring maintenance overhauls; and by requiring the aircraft, the aircraft engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts to be maintained and rebuilt in accordance with instructions from Cirrus, Continental, and Amsafe. The aircraft was last maintained by Arapahoe Aero; Performance Aviation; Wade Walters (Individually, d/b/a

Performance Aviation, and doing business as a member of Performance Aviation); and Charlie Aviation.

22.    Defendants, Arapahoe Aero; Performance Aviation (previous owner); Wade Walters (Individually, d/b/a Performance Aviation, and doing business as a member of Performance Aviation, previous owner); and Charlie Aviation, were the entities that were responsible for the maintenance and repairs on the Cirrus aircraft, the Continental engine, and their component parts, including but not limited to the Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts (designed, manufactured, and sold to permit a pilot to survive a survivable crash without significant injury.  Defendants, Cirrus, Continental, Arapahoe Aero, Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation), and Charlie Aviation, were jointly responsible for the maintenance, installation, and repairs on the Cirrus aircraft, the Continental aircraft engine, and their component parts including, but not limited to, the Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts (designed to permit a pilot to survive a survivable crash without significant injury).

23.    Defendants, Cirrus, Continental, Arapahoe Aero, Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation), Charlie Aviation, and Defendants, John Does I Through IV, were additionally negligent for failing to keep and maintain the Cirrus aircraft, Continental engine, and their component parts including, but not limited to, the Cirrus emergency parachute, Cirrus restraint system, Amsafe

17

seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts (which were designed to allow a pilot to survive a survivable crash without significant injury), in a reasonably safe and airworthy condition; carelessly and recklessly maintaining and repairing the aircraft, aircraft engine and their component parts; violating Federal Aviation Regulations constituting negligence per se; and failing to exercise due and reasonable care under the circumstances.

24.     The aircraft engine failed and Glen Pace could not maintain altitude.  Glen Pace, notified authorities of his engine failure and made an attempt to control the aircraft that was losing altitude, requiring him to make an emergency and forced landing in a vacant field.  On the occasion in question, the Cirrus aircraft, the Continental engine, and their component parts, including but not limited to the Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts (were designed to allow a pilot to survive a survivable crash without significant injury), were defective and unreasonably dangerous.  The unreasonably dangerous and defective conditions of the Cirrus aircraft, the Continental aircraft engine, and their component parts were contributing proximate causes of the engine failure on November 22, 2019.  The unreasonably dangerous condition of the Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were contributing proximate causes of the crash of the aircraft, and the injuries and damages to Plaintiff.

25.     Defendants, Cirrus, Continental, Arapahoe Aero, Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation),

Charlie Aviation, and Defendants, John Does I Through IV, (as the entities responsible for the maintenance and inspection of the Cirrus aircraft, Continental engine, and their component parts), performed maintenance and inspection on the Cirrus aircraft, the Continental aircraft engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts.  Cirrus, Continental, Arapahoe Aero, Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation), Charlie Aviation, and Defendants, John Does I Through IV, were the entities responsible for certifying, servicing, repairing, testing, inspecting, overhauling, rebuilding, and annualling the Cirrus aircraft, the Continental engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts with knowledge that the Cirrus aircraft would be flown by pilots such as Glen Pace on flights such as the flight that occurred on November 22, 2019.  Defendants, Cirrus, Continental, Arapahoe Aero, Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation), Charlie Aviation, and Defendants, John Does I Through IV, were required to test, inspect, certify, maintain, overhaul, repair, install, rebuild, own, operate, sell, and annual the Cirrus aircraft, the Continental engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts so that the Cirrus aircraft, Continental engine, and their component parts would be safe, not dangerous, and not defective.

26.     Prior to November 22, 2019, Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe

inertial reel, and their component parts were manufactured by Cirrus, Amsafe, and Continental and were defective and/or unreasonably dangerous to Plaintiff. The unreasonably dangerous and defective condition of the Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were contributing proximate causes of the engine failure and crash on November 22, 2019, and the injuries and damages of the Plaintiff.

27.     On the occasion in question, Cirrus, Continental, Arapahoe Aero, Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation), Charlie Aviation, and Defendants, John Does I Through IV, were negligent, and their negligence was a contributing proximate cause of the crash in question, the injuries and damages to the Plaintiff because of the failure of the emergency parachute, seatbelt, airbags, and shoulder harness and other component parts (designed to allow a pilot to survive a survivable crash without significant injury). Plaintiff's damages include, but are not limited to, pre-impact fright before the crash and excruciating pain and suffering during and after the crash.

28.     On and before November 22, 2019, Cirrus, Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation), and Continental breached their duties by causing the Cirrus aircraft, the Continental engine, and their component parts, including but not limited to the Cirrus emergency parachute, Cirrus seatbelt, shoulder harness, airbags, and other component parts (designed to allow a pilot to survive a survivable crash without significant injury), to be placed on the market and in service when the aircraft, the aircraft engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were

20

not safe for their intended purposes and uses.  The Cirrus aircraft, the Continental engine, Cirrus

emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe

inertial reel, Amsafe airbags, and their component parts were expected to and did reach the pilot

and operator of the aircraft prior to the time of the crash.  The Cirrus aircraft, Continental engine,

Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness,

Amsafe inertial reel, Amsafe airbags, and their component parts were in a defective and

unreasonably dangerous condition, which was a contributing proximate cause of the engine

failure, the crash of the aircraft, and the excruciating painful injuries suffered by Plaintiff, Glen

Pace.

29.     Prior to November 22, 2019, the Cirrus aircraft, the Continental aircraft engine,

Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness,

Amsafe inertial reel, Amsafe airbags, and their component parts were manufactured, designed,

repaired, installed, inspected, designated airworthy, and sold by Cirrus, Amsafe, Continental,

Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a

member of Performance Aviation).  On the occasion in question, Cirrus, Amsafe, Continental,

Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a

member of Performance Aviation) were negligent in the design, manufacture, repair, inspection,

and sale of the aircraft, aircraft engine, and their component parts, which included the Cirrus

emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt,

Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts

(designed to allow a pilot to survive a survivable crash without significant injury), which

rendered the aircraft, aircraft engine, Cirrus emergency parachute, Cirrus restraint system,

21

Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts defective and unreasonably dangerous.  The Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were designed, manufactured, inspected, installed, sold, and distributed by Cirrus, Amsafe, Continental, Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation); were defective and unreasonably dangerous; and the defective and unreasonably dangerous condition of the Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were a contributing proximate cause of the engine failure, the crash of the aircraft, and the catastrophic injuries and damages to Plaintiff, Glen Pace.

30.     Cirrus, Amsafe, Continental, Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation) manufactured, designed, and sold the Cirrus aircraft, Continental engine, and their component parts, including but not limited to the Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts, and as a result thereof were required to make sure that the Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were properly manufactured, designed, installed, repaired, inspected, certified as airworthy, and sold and that the Cirrus aircraft, Continental engine, and their component parts were properly installed, inspected, repaired, maintained, and that the aircraft, aircraft engine, emergency

22

parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe

shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were

airworthy.  Cirrus, Amsafe, Continental, Performance Aviation, Wade Walters (Individually,

d/b/a Performance Aviation, and as a member of Performance Aviation) certified, inspected,

overhauled, rebuilt, manufactured, designed, sold, and installed the Cirrus aircraft, Continental

engine, and their component parts with knowledge that the aircraft, aircraft engine, and their

component parts would be used on flights such as the flight that occurred on November 22, 2019.

Cirrus, Amsafe, Continental, Performance Aviation, Wade Walters (Individually, d/b/a

Performance Aviation, and as a member of Performance Aviation) were required to inspect, test,

certify, modify, overhaul, manufacture, design, install, and/or sell the Cirrus aircraft, the

Continental engine, and their component parts, (including but not limited to the Cirrus

emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt,

Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts, so

that the aircraft, the aircraft engine, and their component parts would be safe, not dangerous, and

not defective.

31.     On and before November 22, 2019, Cirrus, Continental, Arapahoe Aero,

Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a

member of Performance Aviation), Charlie Aviation, and Defendants, John Does I Through IV,

performed modifications, repairs, annuals, overhauls, rebuilds, certifications, inspections, and

installations on the aircraft, the aircraft engine, and their component parts, including but not

limited to the Cirrus emergency parachute,  Cirrus emergency parachute, Cirrus restraint system,

Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their

component parts, and were required to modify, repair, overhaul, rebuild, inspect, and install the

Cirrus aircraft, Continental engine, and their component parts in accordance with FAA

regulations and in accordance with good professional mechanic and inspector practices. Cirrus,

Continental, Arapahoe Aero, Performance Aviation, Wade Walters (Individually, d/b/a

Performance Aviation, and as a member of Performance Aviation), Charlie Aviation, and

Defendants, John Does I Through IV inspected, modified, annualled, repaired, rebuilt,

overhauled, and installed the Cirrus aircraft, Continental engine, and their component parts and

certified the Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus restraint

system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and

their component parts as being airworthy, safe, not defective, and not unreasonably dangerous.

Contrary to the representations and certifications made in the repair documents, inspection

documents, overhaul documents, the annuals, the aircraft logs, the engine logs, and the aircraft

and engine maintenance documents by Cirrus, Continental, Arapahoe Aero, Performance

Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of

Performance Aviation), Charlie Aviation, and Defendants, John Does I Through IV, that the

aircraft, the aircraft engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt,

Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were

safe, airworthy, and not defective, when actually, the aircraft, the aircraft engine, and their

component parts were defective, unsafe, unreasonably dangerous, and unairworthy. In addition,

the Defendants, Cirrus, Continental, Arapahoe Aero, Performance Aviation, Wade Walters

(Individually, d/b/a Performance Aviation, and as a member of Performance Aviation), Charlie

Aviation, and Defendants, John Does I Through IV, carelessly inspected, modified, repaired,

annualled, rebuilt, certified, installed, and/or overhauled the Cirrus aircraft, Continental engine,

Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness,

Amsafe inertial reel, Amsafe airbags, and their component parts and falsely represented that the

Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe

seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component

parts were airworthy, safe, not defective, and not unreasonably dangerous.

32.     On the occasion in question, the negligence of Cirrus, Continental, Arapahoe

Aero, Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a

member of Performance Aviation), Charlie Aviation, and Defendants, John Does I Through IV,

were contributing proximate cause of the engine failure, the crash of the aircraft, the damages of

Glen Pace including but not limited to the pre-impact fright of Plaintiff before the crash;

excruciating pain and suffering from the crash; and the injuries and damages sustained by

Plaintiff during and after the crash.

33.     The Plaintiff suffered excruciating painful and permanent injuries during and after

the crash of the aircraft because of the failure of the Cirrus emergency parachute, Cirrus

emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe

inertial reel, Amsafe airbags, and their component parts. The damages sustained by Plaintiff were

proximately caused by the negligence of the Defendants, Cirrus, Continental, Arapahoe Aero,

Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a

member of Performance Aviation), Charlie Aviation, and Defendants, John Does I Through IV.

The Plaintiff's damages are in the amount of at least $7,500,000.00 and punitive damages in an

amount sufficient to deter the Defendants, Cirrus, Continental, Arapahoe Aero, Performance

Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation), Charlie Aviation, and Defendants, John Does I Through IV, from such reckless and oppressive conduct in the future.

WHEREFORE, PREMISES CONSIDERED Plaintiff demands Judgment of and from the Defendants, Cirrus Design Corporation d/b/a Cirrus Aircraft Corporation; Continental Motor Corporation; Arapahoe Aero; Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation); Charlie Aviation; Defendants, John Does I Through IV, and Defendants, XYZ Corporations I Through IV, for the damages sustained by Plaintiff, Glen Pace, in the amount of $7,500,000.00; punitive damages in an amount sufficient to deter the Defendants from such reckless and oppressive conduct in the future; prejudgment interest; post judgment interest; and all costs.

## COUNT II

34.    Plaintiff adopts by reference and realleges each and every allegation of all paragraphs of all counts of the Amended Complaint the same as though specifically set out herein again.

35.    Cirrus, Amsafe, Continental, Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation) were, at all relevant times, in the business of designing, manufacturing, testing, processing, modifying, overhauling, warning, factory overhauling, rebuilding, engineering, installing, inspecting, certifying, servicing, distributing, maintaining, selling, and delivering the Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts

(which were in part designed to permit a pilot to survive a survivable crash without significant injury). On and before November 22, 2019, the Cirrus aircraft, Continental engine, and their component parts were represented by Cirrus, Amsafe, Continental, Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation) to be safe and suitable for the purposes for the flight on November 22, 2019. The Cirrus aircraft, the Continental engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were further represented, marketed, and sold by Cirrus, Amsafe, Continental, Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation) as airworthy, safe, not defective, and not unreasonably dangerous.

36.    On the occasion in question, the Cirrus aircraft, the Continental aircraft engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were defective, unreasonably dangerous, and failed, contributing to the cause of the engine failure, the crash of the aircraft, and the injuries and damages to Glen Pace. On the occasion in question, the Cirrus aircraft, the Continental engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were further defective and unreasonably dangerous because of the failure to provide an airworthy aircraft and engine and failure to provide crash worthy component parts, including but not limited to the Cirrus emergency parachute, Cirrus seatbelt, shoulder harness, and other component parts designed to allow a pilot

27

to survive a survivable crash without significant injury.  The Defendants, Cirrus, Amsafe, Continental, Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation) manufactured and placed in the stream of commerce the Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts which failed contributing to the crash of the aircraft and the injuries and damages to the Plaintiff, Glen Pace.  The Cirrus aircraft, the Continental engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were negligently, improperly, and defectively designed, manufactured, installed, inspected, certified, and maintained.  The failure of the aircraft, the aircraft engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts rendered the aircraft, aircraft engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts unsafe for their intended use and purposes.  The design and manufacture of the aircraft, the aircraft engine, and their component parts, including but not limited to the Cirrus emergency parachute, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts (designed to permit a pilot to survive a survivable crash without significant injury), were generally unsafe, defective, unreasonably dangerous, and inadequate, and Cirrus, Amsafe, and Continental knew or should have known of

28

the defective and unsafe conditions; and should have foreseen the defective, unsafe, and unreasonably dangerous conditions, which directly caused or contributed to the cause of the engine failure, the cause of the crash, and the excruciating pain and injuries suffered by Glen Pace.

37. The Cirrus aircraft, Continental aircraft engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were in defective conditions that were unreasonably dangerous to the users of the aircraft, the aircraft engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts which were designed to permit a pilot to survive a survivable crash without significant injury, at the time that the aircraft, aircraft engine, and their component parts left the places of business of the Defendants and the places where the aircraft, aircraft engine, and their component parts were designed, manufactured, assembled, installed, shipped, sold, and placed in the stream of commerce.

38. The Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were manufactured, designed, engineered, modified, processed, tested, overhauled, serviced, inspected, installed, distributed, maintained, sold, and delivered by Cirrus, Amsafe, and Continental. The Defendants, Cirrus, Amsafe, Continental, Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation) sold the aircraft, aircraft engine, Cirrus

emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt,

Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts,

which were designed, manufactured, and sold to permit a pilot to survive a survivable crash

without significant injury, with knowledge that they would be used by pilots on flights such as

that on November 22, 2019.  Cirrus, Amsafe, Continental, Performance Aviation, Wade Walters

(Individually, d/b/a Performance Aviation, and as a member of Performance Aviation) had duties

to properly engineer, manufacture, design, modify, overhaul, rebuild, test, process, inspect,

certify, service, install, perform factory overhauls or rebuilds, distribute, maintain, sell, or deliver

the aircraft, the aircraft engine, and their component parts, including but not limited to the Cirrus

emergency parachute, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint

system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and

their component parts (designed in part to allow a pilot to survive a survivable crash without

significant injury), so that the aircraft, aircraft engine, Cirrus emergency parachute, Cirrus

restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe

airbags, and their component parts would be airworthy, safe, not defective, and not unreasonably

dangerous.

   39. Cirrus, Amsafe, Continental, Performance Aviation, Wade Walters (Individually,

d/b/a Performance Aviation, and as a member of Performance Aviation) breached their duties by

placing the Cirrus aircraft, Continental engine, Cirrus emergency parachute, Cirrus emergency

parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial

reel, Amsafe airbags, and their component parts on the market and in conditions that were not

reasonably safe for their intended purposes and uses.  The Cirrus aircraft, Continental engine,

Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe

seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component

parts were expected to and did reach the pilot, Glen Pace, without substantial changes in their

conditions from the time they left the places of the manufacturer and seller, and/or placed on the

market and sold until the time of the crash on November 22, 2019. The Cirrus aircraft, the

Continental aircraft engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus

restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe

airbags, and their component parts were used by Glen Pace on the November 22, 2019, flight in

the manner and for the purposes for which they were intended, manufactured, and sold.

40. The Cirrus aircraft, Continental engine, and their component parts were defective,

because the aircraft engine failed; because the Cirrus aircraft was not crash worthy; because the

Cirrus aircraft emergency parachute failed; because the Cirrus restraint system failed; because the

Amsafe seatbelt failed; because the Amsafe shoulder harness failed; because the Amsafe inertial

reel failed, and their components parts failed; and because Cirrus, Amsafe, and Continental failed

to give adequate warnings and instructions to the pilot in command and because the aircraft,

aircraft engine, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system,

Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their

component parts were in defective conditions and were negligently and improperly designed,

manufactured, and sold. Further, the Cirrus aircraft, Continental engine, Cirrus emergency

parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe

shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were

defective, because they failed to perform to express factual representations upon which the

Plaintiff justifiably relied and elected to use the product and were defective, because express warranties were breached.

41.     The defective condition of the aircraft, the aircraft engine, and their component parts, including but not limited to the Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts rendered the aircraft, aircraft engine, and their component parts unreasonably dangerous to the Plaintiff.  Cirrus failed to properly manufacture the aircraft and Cirrus's failure to design, manufacture, and build the aircraft, the emergency parachute, Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts (which were in part designed to protect the pilot so he would have a chance to survive the crash).  Continental failed to properly manufacture the aircraft engine and Continental's failure to design, manufacture, and build the aircraft engine.  The defective and unreasonably dangerous condition of the aircraft, aircraft engine, and their component parts proximately caused the aircraft engine to fail; the crash of the aircraft; and the excruciating painful injuries suffered by Glen Pace.

42.     The Cirrus aircraft, Continental aircraft engine, and their component parts, including but not limited to the Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts maintained inherently dangerous characteristics which are not generic aspects of the aircraft, aircraft engine, and their component parts which can be eliminated without substantially compromising the usefulness or desirability and which are not recognized by the ordinary person, including, but not limited to, Plaintiff, with ordinary knowledge common to the community.  The

32

aircraft, the aircraft engine, and their component parts, including but not limited to the Cirrus

emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe

inertial reel, Amsafe airbags, and their component parts were defective, because they failed to

have adequate warnings or instructions, and because Cirrus, Amsafe, and Continental knew, or in

the light of reasonably available knowledge knew, or should have known that the aircraft, the

aircraft engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe

shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts when they left

the control of the manufacturers and sellers, were in defective conditions.

43.     On the occasion in question, Plaintiff, did not have any knowledge of the

defective conditions of the aircraft, the aircraft engine, Cirrus emergency parachute, Cirrus

restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe

airbags, and their component parts; did not and could not have appreciated the danger of the

defective conditions; and did not deliberately or voluntarily expose himself to the dangerous

propensities of the aircraft, the aircraft engine, and their component parts.  The dangerous

propensities and characteristics of the Cirrus aircraft, Continental aircraft engine, Cirrus

emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe

inertial reel, Amsafe airbags, and their component parts were not known to the Plaintiff and were

not open and not obvious to him.  The Cirrus aircraft, Continental aircraft engine, Cirrus

emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe

inertial reel, Amsafe airbags, and their component parts were defective in design, because the

manufacturers and sellers knew, or in light of reasonably available knowledge or in the exercise

of reasonable care, should have known about the dangerous propensities of the aircraft, the

33

aircraft engine, and their component parts, including but not limited to the Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts. Further, alternative feasible designs existed in other models that would have reasonably prevented the engine failure, the crash of the aircraft, the emergency parachute failure, restraint system failure, seatbelt failure, seatbelt harness failure, inertial reel failure, and the injuries to the Plaintiff. The alternate and feasible designs would have prevented the engine failure; the crash of the aircraft; the emergency parachute failure, restraint system failure, seatbelt failure, seatbelt harness failure, inertial reel failure, and the injuries and damages to Plaintiff, but would not have impaired the utility, usefulness, practicability, or desirability of the aircraft, aircraft engine, or their component parts.

44.     Cirrus, Amsafe, Continental, Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation) made specific representations to the owner of the aircraft and Glen Pace that the aircraft, aircraft engine, and their component parts were safe, not defective, and not unreasonably dangerous because Glen Pace relied upon the specific certifications and representations of Cirrus, Continental, Amsafe, Performance Aviation, and Wade Walters made in sales brochures, advertisements, and log books. Plaintiff believed the representations made to him by Cirrus, Amsafe, Continental, Performance Aviation, Wade Walters and relied upon those representations to his detriment by using the aircraft, aircraft engine, and their component parts using them as they were warranted and represented to him could be used and would prevent injury and damages to Plaintiff in a crash of the aircraft.

34

45.     Cirrus, Amsafe, Continental, Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation) made representations, advertisements, warranties, and certifications that the aircraft, aircraft engine, and their component parts were safe, airworthy, not defective, and not unreasonably dangerous, although Cirrus, Amsafe, and Continental had in their possession, or should have had in their possession, information and factual information that the aircraft, aircraft engine, and their component parts contained inherent design flaws and defects which caused the aircraft engine to fail, which caused the crash of the aircraft, which caused the painful and excruciating injuries to the Plaintiff, and which caused the aircraft, the aircraft engine, and their component parts were unreasonably dangerous and defective.

WHEREFORE, PREMISES CONSIDERED Plaintiff demands Judgment of and from the Defendants, Cirrus Design Corporation d/b/a Cirrus Aircraft Corporation; Continental Motor Corporation; Arapahoe Aero; Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation); Charlie Aviation; Defendants, John Does I Through IV, and Defendants, XYZ Corporations I Through IV, for the damages sustained by Glen Pace in the amount of $7,500,000.00; punitive damages in an amount sufficient to deter the Defendants from such reckless and oppressive conduct in the future; prejudgment interest; post judgment interest; and all costs.

COUNT III

46.     Plaintiff, adopts by reference and realleges each and every allegation of all paragraphs of this Amended Complaint the same as though specifically set out herein.

35

47.     Cirrus, Amsafe, Continental, Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation) impliedly warranted and represented by the sale, modification, and overhaul and rebuilding of the aircraft, aircraft engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts that the aircraft, aircraft engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts were of merchantable quality and fit for the uses and purposes for which they were intended, manufactured, and sold.  Cirrus, Amsafe,  Continental, Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation) breached implied warranties as aforesaid, and as a proximate result thereof, Plaintiff suffered damages and are entitled to compensation for their actual damages and punitive damages in a sum sufficient to deter Defendants, Cirrus, Amsafe, Continental, Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation) from such oppressive and reckless conduct in the future.

WHEREFORE, PREMISES CONSIDERED Plaintiff demands Judgment of and from the Defendants, Cirrus Design Corporation d/b/a Cirrus Aircraft Corporation; Continental Motor Corporation; Arapahoe Aero; Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation); Charlie Aviation; Defendants, John Does I Through IV, and Defendants, XYZ Corporations I Through IV, for the damages sustained by Glen Pace in the amount of $7,500,000.00; punitive damages in an amount

sufficient to deter the Defendants from such reckless and oppressive conduct in the future;

prejudgment interest; post judgment interest; and all costs.

## COUNT IV

48.     Plaintiff adopts by reference and realleges each and every allegation of all

paragraphs of all counts of the Amended Complaint the same as though specifically set out

herein again.

49.     Defendants, Cirrus, Amsafe, Continental, Performance Aviation, Wade Walters

(Individually, d/b/a Performance Aviation, and as a member of Performance Aviation) were in

the business of designing, manufacturing, testing, processing, engineering, modifying,

overhauling, inspecting, performing factory overhauls and rebuilds, servicing, distributing,

maintaining, installing, selling, and/or delivering aircraft, aircraft engines, Cirrus emergency

parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial

reel, Amsafe airbags, and their component parts.  The aircraft, aircraft engine, Cirrus emergency

parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial

reel, Amsafe airbags, and their component parts were not reasonably safe for their intended

purposes and uses and were defective and unreasonably dangerous at the time they left the places

of business of the manufacturers and sellers and at the time of the crash on November 22, 2019.

50.     Plaintiff was unaware of the defective, unreasonably dangerous, and hazardous

conditions of the aircraft, the aircraft engine, and their component parts, including but not limited

to the Cirrus emergency parachute, Cirrus emergency parachute, Cirrus restraint system, Amsafe

seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component

parts which were  designed to allow a pilot to survive a survivable crash without significant

injury; was unaware of the unreasonably dangerous and hazardous conditions created by the defective aircraft, the aircraft engine, Cirrus emergency parachute, Cirrus restraint system, Amsafe seatbelt, Amsafe shoulder harness, Amsafe inertial reel, Amsafe airbags, and their component parts and was unaware that the Defendants had failed to use technology to eliminate or reduce the dangers of the defective condition of the aircraft, aircraft engine, and their component parts. As a result thereof, Cirrus, Amsafe, and Continental are strictly liable in tort for the failure of the engine, the crash of the aircraft, and the excruciating pain and damages suffered by Glen Pace.

WHEREFORE, PREMISES CONSIDERED Plaintiff demands Judgment of and from the Defendants, Cirrus Design Corporation d/b/a Cirrus Aircraft Corporation; Continental Motor Corporation; Arapahoe Aero; Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation); Charlie Aviation; Defendants, John Does I Through IV, and Defendants, XYZ Corporations I Through IV, for the damages sustained by Glen Pace in the amount of $7,500,000.00; punitive damages in an amount sufficient to deter the Defendants from such reckless and oppressive conduct in the future; prejudgment interest; post judgment interest; and all costs.

## COUNT V

51.     Plaintiff adopts by reference and realleges each and every allegation of all paragraphs of all counts of the Amended Complaint the same as though specifically set out herein again.

52.     Performance Aviation, LLC, and Wade Walters breached their contract for sale of the aircraft.

WHEREFORE, PREMISES CONSIDERED Plaintiff demands Judgment of and from the Defendants, Performance Aviation and Wade Walters, for the damages sustained by Glen Pace in the amount of $7,500,000.00.

<div align="center">AD DAMNUM</div>

WHEREFORE, PREMISES CONSIDERED Plaintiff demands Judgment of and from the Defendants, Cirrus Design Corporation d/b/a Cirrus Aircraft Corporation; Continental Motor Corporation; Arapahoe Aero; Performance Aviation, Wade Walters (Individually, d/b/a Performance Aviation, and as a member of Performance Aviation); Charlie Aviation; Defendants, John Does I Through IV, and Defendants, XYZ Corporations I Through IV, for the damages sustained by Glen Pace in the amount of $7,500,000.00; punitive damages in an amount sufficient to deter the Defendants from such reckless and oppressive conduct in the future; prejudgment interest; post judgment interest; and all costs.

Respectfully submitted, this the 17TH day of JANUARY, 2022.

PLAINTIFF

By: _____

WAYNE E. FERRELL, JR.

OF COUNSEL:

WAYNE E. FERRELL, JR.
Mississippi Bar No. 5182
Attorney at Law
Law Offices of Wayne E. Ferrell, Jr., PLLC
405 Tombigbee Street
Post Office Box 24448
Jackson, Mississippi 39225-4448
(601) 969-4700

Accepted GS Apr/18/2014

## FAA FORM 8130-6, APPLICATION FOR U.S. AIRWORTHINESS CERTIFICATE

Form Approved O.M.B. No. 2120-0018
Expiration Date 02/28/2013

| U.S. Department of Transportation — Federal Aviation Administration | APPLICATION FOR U.S. AIRWORTHINESS CERTIFICATE | INSTRUCTIONS - Print or type. Do not write in shaded areas; these are for FAA use only. Submit original only to an authorized FAA Representative. If additional space is required, use attachment. For special flight permits complete Sections II, VI, and VII as applicable. |
|---|---|---|

### I. AIRCRAFT DESCRIPTION

| 1. REGISTRATION MARK | 2. AIRCRAFT BUILDER'S NAME (Make) | 3. AIRCRAFT MODEL DESIGNATION | 4. YR. MFR. | FAA CODING |
|---|---|---|---|---|
| N728DW | Cirrus Design Corporation | SR22T | 2014 | |

| 5. AIRCRAFT SERIAL NO. | 6. ENGINE BUILDER'S NAME (Make) | 7. ENGINE MODEL DESIGNATION |
|---|---|---|
| 0714 | Continental Motors Inc. | TSIO-550-K |

| 8. NUMBER OF ENGINES | 9. PROPELLER BUILDER'S NAME (Make) | 10. PROPELLER MODEL DESIGNATION | 11. AIRCRAFT IS (Check if applicable) |
|---|---|---|---|
| 1 | Hartzell Propeller Inc. | PHC-J3Y1F-1N/N7605B | IMPORT |

### II. CERTIFICATION REQUESTED

APPLICATION IS HEREBY MADE FOR: (Check applicable items)

| A | 1 | STANDARD AIRWORTHINESS CERTIFICATE (Indicate category) | ✓ NORMAL | UTILITY | ACROBATIC | TRANSPORT | COMMUTER | BALLOON | OTHER |
|---|---|---|---|---|---|---|---|---|---|

| B | | SPECIAL AIRWORTHINESS CERTIFICATE (Check appropriate items) |
|---|---|---|

| | 7 | PRIMARY | | | | |
|---|---|---|---|---|---|---|
| | 9 | LIGHT-SPORT (Indicate Class) | Airplane | Power-Parachute | Weight-Shift-Control | Glider | Lighter than Air |
| | 2 | LIMITED | | | | |

| | 5 | PROVISIONAL (Indicate class) | 1 | CLASS I | | |
|---|---|---|---|---|---|---|
| | | | 2 | CLASS II | | |

| | 3 | RESTRICTED (Indicate operation(s) to be conducted) | 1 | AGRICULTURE AND PEST CONTROL | 2 | AERIAL SURVEY | 3 | AERIAL ADVERTISING |
|---|---|---|---|---|---|---|---|---|
| | | | 4 | FOREST (Wildlife conservation) | 5 | PATROLLING | 6 | WEATHER CONTROL |
| | | | 0 | OTHER (Specify) | | | | |

| | 4 | EXPERIMENTAL (Indicate operation(s) to be conducted) | 1 | RESEARCH AND DEVELOPMENT | 2 | AMATEUR BUILT | 3 | EXHIBITION |
|---|---|---|---|---|---|---|---|---|
| | | | 4 | AIR RACING | 5 | CREW TRAINING | 6 | MARKET SURVEY |
| | | | 7 | TO SHOW COMPLIANCE WITH THE CFR | | 8 (Primary Category) KIT BUILT AIRCRAFT | | |
| | | | 8 | OPERATING LIGHT-SPORT | 8A | Existing aircraft without an airworthiness certificate & do not meet § 103.1 | | |
| | | | | | 8B | Operating Light-Sport Kit-built | | |
| | | | | | 8C | Operating light-sport previously issued special light-sport category airworthiness certificate under § 21.190 | | |
| | | | 9 | UNMANNED AIRCRAFT | 9A | RESEARCH AND DEVELOPMENT | 9C | CREWTRAINING |
| | | | | | 9B | MARKET SURVEY | | |

| | 8 | SPECIAL FLIGHT PERMIT (Indicate operation to be conducted, then complete Section VI or VII as applicable on reverse side) | 1 | FERRY FLIGHT FOR REPAIRS, ALTERATIONS, MAINTENANCE, OR STORAGE | | |
|---|---|---|---|---|---|---|
| | | | 2 | EVACUATE FROM AREA OF IMPENDING DANGER | | |
| | | | 3 | OPERATION IN EXCESS OF MAXIMUM CERTIFICATED TAKE-OFF WEIGHT | | |
| | | | 4 | DELIVERING OR EXPORTING | 5 | PRODUCTION FLIGHT TESTING |
| | | | 6 | CUSTOMER DEMONSTRATION FLIGHTS | | |

| C | 6 | MULTIPLE AIRWORTHINESS CERTIFICATE (Check ABOVE "Restricted Operation" and "Standard" or "Limited" as applicable) |
|---|---|---|

### III. OWNER'S CERTIFICATION

A. REGISTERED OWNER (As shown on certificate of aircraft registration) — IF DEALER, CHECK HERE ► ✓

| NAME | ADDRESS |
|---|---|
| Cirrus Design Corporation | 4515 Taylor Circle, Duluth MN 55811 |

B. AIRCRAFT CERTIFICATION BASIS (Check applicable blocks and complete items as indicated)

| ✓ AIRCRAFT SPECIFICATION OR TYPE CERTIFICATE DATA SHEET (Give No. and Revision No.) A00009CH Rev19 | ✓ AIRWORTHINESS DIRECTIVES (Check if all applicable ADs are complied with and give the number of the last AD SUPPLEMENT available in the biweekly series as of the date of application) 2014-03 |
|---|---|
| AIRCRAFT LISTING (Give page number(s)) N/A | SUPPLEMENTAL TYPE CERTIFICATE (List number of each STC incorporated) SA01708SE |

C. AIRCRAFT OPERATION AND MAINTENANCE RECORDS

| ✓ CHECK IF RECORDS N COMPLIANCE WITH 14 CFR section 91.417 | TOTAL AIRFRAME HOURS 1.8 HOURS | EXPERIMENTAL ONLY (Enter hours from since last certificate issued or renewed) |
|---|---|---|

D. CERTIFICATION - I hereby certify that I am the registered owner (or his agent) of the aircraft described above, that the aircraft is registered with the Federal Aviation Administration in accordance with Title 49 of the United States Code 44101 et seq. and applicable Federal Aviation Regulations, and that the aircraft has been inspected and is airworthy and eligible for the airworthiness certificate requested.

| DATE OF APPLICATION | NAME AND TITLE (Print or type) | SIGNATURE |
|---|---|---|
| 02/18/2014 | Brian D. Zapp  MFG Representative | Brian D Zapp |

### IV. INSPECTION AGENCY VERIFICATION

A. THE AIRCRAFT DESCRIBED ABOVE HAS BEEN INSPECTED AND FOUND AIRWORTHY BY: (Complete this section only if 14 CFR part 21.183(d) applies)

| 2 | 14 CFR part 121 CERTIFICATE HOLDER (Give Certificate No.) | 3 | CERTIFICATED MECHANIC (Give Certificate No.) | 6 | CERTIFICATED REPAIR STATION (Give Certificate No.) |
|---|---|---|---|---|---|
| 5 | AIRCRAFT MANUFACTURER (Give name or firm) | | | | |

| DATE | TITLE | SIGNATURE |
|---|---|---|
| | | |

### V. FAA REPRESENTATIVE CERTIFICATION

(Check ALL applicable block items A and B)

| A. I find that the aircraft described in Section I or VII meets requirements for | 4 | ✓ THE CERTIFICATE REQUESTED |
|---|---|---|
| | | AMENDMENT OR MODIFICATION OF CURRENT AIRWORTHINESS CERTIFICATE |

| B. Inspection for a special flight permit under Section VII was conducted by: | FAA INSPECTOR | FAA DESIGNEE | | |
|---|---|---|---|---|
| | CERTIFICATE HOLDER UNDER | 14 CFR part 65 | 14 CFR part 121 OR 135 | 14 CFR part 145 |

| DATE | MIDO/FSDO OFFICE | | FAA INSPECTOR'S SIGNATURE or DESIGNEE'S SIGNATURE AND NO. | | FAA INSPECTOR'S CERTIFICATION FILE REVIEW SIGNATURE |
|---|---|---|---|---|---|
| 02/18/2014 | CE-46 | 4 | David C. Hallfrisch DMIR-833854-CE | 1 | Dennis L. Henderson |

FAA Form 8130-6 (4/11) All Previous Editions Superseded          Electronic Format –PDF          Page



EXHIBIT A

| VI. PRODUCTION FLIGHT TESTING | A. MANUFACTURER | | | |
|---|---|---|---|---|
| | NAME | | ADDRESS | |
| | B. PRODUCTION BASIS *(Check applicable item)* | | | |
| | | PRODUCTION CERTIFICATE *(Give production certificate number)* | | |
| | | TYPE CERTIFICATE | | |
| | | OTHER: | | |
| | C. GIVE QUANTITY OF CERTIFICATES REQUIRED FOR OPERATING NEEDS | | | |
| | DATE OF APPLICATION | NAME AND TITLE *(Print or type)* | | SIGNATURE |

**VII. SPECIAL FLIGHT PERMIT PURPOSES OTHER THAN PRODUCTION FLIGHT TEST**

A. DESCRIPTION OF AIRCRAFT

| REGISTERED OWNER | ADDRESS |
|---|---|
| BUILDER *(Make)* | MODEL |
| SERIAL NUMBER | REGISTRATION MARK |

B. DESCRIPTION OF FLIGHT    CUSTOMER DEMONSTRATION FLIGHTS ☐ *(Check if applicable)*

| FROM | TO | |
|---|---|---|
| VIA | DEPARTURE DATE | DURATION |

C. CREW REQUIRED TO OPERATE THE AIRCRAFT AND ITS EQUIPMENT

| | PILOT | CO-PILOT | FLIGHT ENGINEER | OTHER *(Specify)* |
|---|---|---|---|---|

D. THE AIRCRAFT DOES NOT MEET THE APPLICABLE AIRWORTHINESS REQUIREMENTS AS FOLLOWS:

E. THE FOLLOWING RESTRICTIONS ARE CONSIDERED NECESSARY FOR SAFE OPERATION: *(Use attachment if necessary)*

F. CERTIFICATION - I hereby certify that I am the registered owner (or his agent) of the aircraft described above; that the aircraft is registered with the Federal Aviation Administration in accordance with Title 49 of the United States Code 44101 et seq. and applicable Federal Aviation Regulations; and that the aircraft has been inspected and is safe for the flight described.

| DATE | NAME AND TITLE *(Print or type)* | SIGNATURE |
|---|---|---|

**VIII. AIRWORTHINESS DOCUMENTATION (FAA/DESIGNEE use only)**

| | | |
|---|---|---|
| ✓ | A. Operating Limitations and Markings in Compliance With 14 CFR Section 91.9, As Applicable | G. Statement of Conformity, FAA Form 8130-9 *(Attach when required)* |
| | B. Current Operating Limitations Attached | H. Foreign Airworthiness Certification for Import Aircraft *(Attach when required)* |
| | C. Data, Drawings, Photographs, etc. *(Attach when required)* | I. Previous Airworthiness Certificate Issued in Accordance With 14 CFR Section _____ CAR _____ *(Original attached)* |
| ✓ | D. Current Weight and Balance Information Available in Aircraft | |
| | E. Major Repair and Alteration, FAA Form 337 *(Attach when required)* | ✓ J. Current Airworthiness Certificate Issued in Accordance With 14 CFR Section 21.183 (a) *(Copy attached)* |
| | F. This Inspection Recorded in Aircraft Records | K. Light-Sport Aircraft Statement of Compliance, FAA Form 8130-15 *(Attach when required)* |

UNITED STATES OF AMERICA
DEPARTMENT OF TRANSPORTATION-FEDERAL AVIATION ADMINISTRATION

# STANDARD AIRWORTHINESS CERTIFICATE

| 1 NATIONALITY AND REGISTRATION MARKS | 2 MANUFACTURER AND MODEL | 3 AIRCRAFT SERIAL NUMBER | 4 CATEGORY |
|---|---|---|---|
| N728DW | Cirrus Design Corporation SR22T | 0714 | NORMAL |

**5 AUTHORITY AND BASIS FOR ISSUANCE**

This airworthiness certificate is issued pursuant to 49 U.S.C. § 44704 and certifies that, as of the date of issuance, the aircraft to which issued has been inspected and found to conform to the type certificate therefor, to be in condition for safe operation, and has been shown to meet the requirements of the applicable comprehensive and detailed airworthiness code as provided by Annex 8 to the Convention on International Civil Aviation, except as noted herein.

Exceptions:

"Exemption No. 9993 to regulation 23.1419(a) for Flight Into Known Icing operations. Exemption allows for a higher stall speed than that required by 23.49(c) & (d) when operating in icing conditions."

**6 TERMS AND CONDITIONS**

Unless sooner surrendered, suspended, revoked, or a termination date is otherwise established by the FAA, this airworthiness certificate is effective as long as the maintenance, preventative maintenance, and alterations are performed in accordance with Parts 21, 43, and 91 of the Federal Aviation Regulations, as appropriate, and the aircraft is registered in the United States.

| DATE OF ISSUANCE | FAA REPRESENTATIVE | DESIGNATION NUMBER |
|---|---|---|
| Feb 18, 2014 | David C. Hallfrisch | DMIR-833854-CE |

Any alteration, reproduction, or misuse of this certificate may be punishable by a fine not exceeding $1,000 or imprisonment not exceeding 3 years or both.
**THIS CERTIFICATE MUST BE DISPLAYED IN THE AIRCRAFT IN ACCORDANCE WITH APPLICABLE FEDERAL AVIATION REGULATIONS.**

FAA Form 8100-2 (04-11) Supersedes Previous Edition

EXHIBIT
B

FILED WITH FAA
AIRCRAFT REGISTRATION DR

2019 DEC 19 P 1: 17

OKLAHOMA CITY
OKLAHOMA

Case: 46CI1:21-cv-00304-AM   Document #: 7-3   Filed: 01/17/2022   Page 44 of 55

FORM APPROVED
OMB No. 2120-0042

Accepted PH Apr/07/2014

UNITED STATES OF AMERICA DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION-MIKE MONRONEY AERONAUTICAL CENTER
AIRCRAFT REGISTRATION APPLICATION

CERT: ISSUE DATE

**UNITED STATES REGISTRATION NUMBER** N 728DW

AIRCRAFT MANUFACTURER & MODEL

Cirrus SR22T Design corp SR22T

AIRCRAFT SERIAL No.

0714

**FOR FAA USE ONLY**

TYPE OF REGISTRATION (Check One box)

☐ 1. Individual  ☐ 2. Partnership  ☒ 3. Corporation  ☐ 4. Co-Owner  ☐ 5. Government
☐ 8. Non-Citizen Corporation  ☐ 9. Non-Citizen Corporation Co-Owner

NAME OR APPLICANT (Person(s) shown on evidence of ownership. If individual, give last name, first name, and middle initial.)

Performance Aviation LLC

TELEPHONE NUMBER: (      )

ADDRESS (Permanent mailing address for first applicant on list) (If P.O. Box is used, physical address must also be shown.)

Number and street: 104 Bocage Ct.

Rural Route:                           P.O. Box:

| CITY | STATE | ZIP CODE |
|------|-------|----------|
| Hattiesburg | MS | 39402 |

☐ **CHECK HERE IF YOU ARE ONLY REPORTING A CHANGE OF ADDRESS**
**ATTENTION! Read the following statement before signing this application.**
**This portion MUST be completed.**

A false or dishonest answer to any question in this application may be grounds for punishment by fine and/or imprisonment
(U.S. Code, Title 18, Sec. 1001).

## CERTIFICATION

I/WE CERTIFY:

(1) That the above aircraft is owned by the undersigned applicant, who is a citizen (including corporations)
of the United States.
(For voting trust, give name of trustee: _____ ), or:
CHECK ONE AS APPROPRIATE:
a. ☐ A resident alien, with alien registration (Form 1-151 or Form 1-551) No. _____
b. ☐ A non-citizen corporation organized and doing business under the laws of (state) _____
and said aircraft is based and primarily used in the United States. Records or flight hours are available for
inspection at _____

(2) That the aircraft is not registered under the laws of any foreign country; and
(3) That legal evidence of ownership is attached or has been filed with the Federal Aviation Administration.

NOTE: If executed for co-ownership all applicants must sign. Use reverse side if necessary.

TYPE OR PRINT NAME BELOW SIGNATURE

EACH PART OF THIS APPLICATION MUST BE SIGNED IN INK.

| SIGNATURE | TITLE | DATE |
|-----------|-------|------|
| *[signature]* | Manager | |
| SIGNATURE | TITLE | DATE |
| Wade Walters | | |
| SIGNATURE | TITLE | DATE |

NOTE Pending receipt of the Certificate of Aircraft Registration, the aircraft may be operated for a period n___
days, during which time the PINK copy of this application must be carried in the aircraft.

AC Form 8050-1 (5/12) (NSN 0052-00-628-9007)

EXHIBIT
C

FILED WITH FAA
AIRCRAFT REGISTRATION BR
2014 FEB 25    AM 11 31
OKLAHOMA CITY
OKLAHOMA

FORM APPROVED
OMB NO. 2120-0042

## UNITED STATES OF AMERICA
U.S. DEPARTMENT OF TRANSPORTATION FEDERAL AVIATION ADMINISTRATION

### AIRCRAFT BILL OF SALE

FOR AND IN CONSIDERATION OF $ ___ THE UNDERSIGNED OWNER(S) OF THE FULL LEGAL AND BENEFICIAL TITLE OF THE AIRCRAFT DESCRIBED AS FOLLOWS:

| UNITED STATES REGISTRATION NUMBER | N N728DW |
|---|---|

AIRCRAFT MANUFACTURER & MODEL
**CIRRUS** *Design corp*          SR22T

AIRCRAFT SERIAL No.          0714

DOES THIS ___ DAY OF ___ HEREBY SELL, GRANT, TRANSFER AND DELIVER ALL RIGHTS, TITLE, AND INTERESTS IN AND TO SUCH AIRCRAFT UNTO:

Do Not Write In This Block
FOR FAA USE ONLY

**PURCHASER**

NAME AND ADDRESS
(IF INDIVIDUAL(S), GIVE LAST NAME, FIRST NAME, AND MIDDLE INITIAL.)

Performance Aviation LLC

104 Bocage Ct

Hattiesburg          MS          39402

DEALER CERTIFICATE NUMBER

AND TO ___ EXECUTORS, ADMINISTRATORS, AND ASSIGNS TO HAVE AND TO HOLD SINGULARLY THE SAID AIRCRAFT FOREVER AND WARRANTS THE TITLE THEREOF:

IN TESTIMONY WHEREOF ___ HAVE SET ___ HAND AND SEAL THIS ___ DAY OF ___

| NAME(S) OF SELLER (TYPED OR PRINTED) | SIGNATURE(S) (IN INK) (IF EXECUTED FOR CO-OWNERSHIP, ALL MUST SIGN.) | TITLE (TYPED OR PRINTED) |
|---|---|---|
| **SELLER** CIRRUS DESIGN CORPORATION | *Laura Warren-Finke* <br> Laura Warren-Finke | **Client Relations Manager** |
| | | |
| | | |

ACKNOWLEDGMENT (NOT REQUIRED FOR PURPOSES OF FAA RECORDING: HOWEVER, MAY BE REQUIRED BY LOCAL LAW FOR VALIDITY OF THE INSTRUMENT.)

ORIGINAL: TO FAA:

AC Form 8050-2 (9/92) (NSN 0052-00-629-0003) Supersedes Previous Edition

EXHIBIT
D

I hereby certify that this is a true and correct copy of the original

A I C

TK000113 Conveyance Recorded Apr/07/2014 12:50 PM FAA

140561130327
$5.00  02/25/2014


CAR CERT

FILED WITH FAA
AIRCRAFT REGISTRATION BR

2014 FEB 25  AM 11 31

OKLAHOMA CITY
OKLAHOMA

i

DOCUMENT LEVEL ANNOTATIONS FOR DOCUMENT AREU05622794

Orig #2793 ret'd to AIC

MEMORANDUM TO THE FILE

MONICA OWENS                                    February 10, 2014
ID                                                    DATE

A Prior Record search was performed for CIRRUS DESIGN CORP SR22T, 0714 on February 10, 2014.  Search results:

No Prior Record

Assigned N728DW



U.S. Department
of Transportation
**Federal Aviation
Administration**

Flight Standards Service
Aircraft Registration Branch, AFS-750

P.O. Box 25504
Oklahoma City, Oklahoma 73125-0504
(405) 954-3116
Toll Free: 1-866-762-9434
WEB Address:  http://registry.faa.gov

February 10, 2014

CIRRUS DESIGN CORP
4515 TAYLOR CIR
DULUTH MN  55811-1548

Dear Sirs:

United States identification mark N728DW has been assigned to CIRRUS DESIGN CORP
SR22T, serial number 0714, Mode S Transponder Code 52340644 as requested.  This
manufacturer's assignment of special registration number cannot be used as an authorization for a
number change.

If we may be of further assistance, please contact the Aircraft Registration Branch at
(405) 954-3116 or toll free 1-866-762-9434.

Sincerely,

M. Owens

Legal Instruments Examiner
Aircraft Registration Branch

AFS-750-SUPPORT-5 (12/11)

Accepted MO Feb/10/2014



Date: 2/7/2014

Federal Aviation Administration
Attn: Aircraft Registration/Central Records
PO Box 25504
Oklahoma City, OK  73125-0504
(405) 954-3116

Please assign the following registration number to **Cirrus Design Corp**.

We have requested AIC Title's assistance on our behalf to expedite the assignment of this registration number.

| FAA Registration Number | Aircraft Make | Model | SN |
|---|---|---|---|
| 728DW | CIRRUS DESIGN CORP | SR22T | 0714 |

Thank you for your attention in this matter.  If you have any questions, please contact a Documents Specialist at AIC Title – (405) 948-1811.

Sincerely,

Aaron Tschida
Client Relations Manager
Cirrus Design Corp



FILED WITH FAA
AIRCRAFT REGISTRATION BR
2014 FEB 10 AM 9 21
OKLAHOMA CITY
OKLAHOMA

# AIRCRAFT SECURITY AGREEMENT
## (Continued)

| Loan No: 5938678 | Page 7 |
|---|---|

**Grantor.** The word "Grantor" means Martin Aviation LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Community Bank, Ellisville, Mississippi, its successors and assigns.

**Note.** The word "Note" means the Note dated October 24, 2017 and executed by Martin Aviation LLC in the principal amount of $402,329.40, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS AIRCRAFT SECURITY AGREEMENT AND GRANTOR AGREES TO ITS TERMS. THIS AIRCRAFT SECURITY AGREEMENT IS DATED OCTOBER 24, 2017.

GRANTOR:

MARTIN AVIATION LLC

By: _____
Jeff  Martin, Managing Member of Martin Aviation
LLC



GR002461 Conveyance Recorded Oct/30/2017 08:02 AM FAA

**UNITED STATES OF AMERICA**
U.S. DEPARTMENT OF TRANSPORTATION FEDERAL AVIATION ADMINISTRATION
**AIRCRAFT BILL OF SALE**

FOR AND IN CONSIDERATION OF $ 1&OVC   THE UNDERSIGNED OWNER(S) OF THE FULL
LEGAL AND BENEFICIAL TITLE OF THE AIRCRAFT DESCRIBED AS FOLLOWS:

| UNITED STATES REGISTRATION NUMBER | **N729DW** |
|---|---|

AIRCRAFT MANUFACTURER & MODEL
**CIRRUS DESIGN CORP SR22T**

AIRCRAFT SERIAL NUMBER
**0714**

DOES THIS _27th_ DAY OF _October_ , 2017
HEREBY SELL, GRANT, TRANSFER AND DELIVER ALL RIGHTS, TITLE, AND
INTERESTS IN AND TO SUCH AIRCRAFT UNTO:

**PURCHASER**

NAME AND ADDRESS
(IF INDIVIDUAL(S), GIVE LAST NAME, FIRST NAME, AND MIDDLE INITIAL)

Martin Aviation LLC
16192 Coastal Hwy
Lewes, DE 19958

DEALER CERTIFICATE NUMBER

AND TO   ITS SUCCESSORS   AND ASSIGNS TO HAVE AND TO HOLD SINGULARLY THE SAID AIRCRAFT FOREVER,
AND WARRANTS THE TITLE THEREOF.

IN TESTIMONY WHEREOF   I   HAVE SET   MY   HAND ~~AND SEAL~~ THIS _27th_ DAY OF _October_ ,2017

**SELLER**

| NAME(S) OF SELLER (TYPED OR PRINTED) | SIGNATURE(S) (IN INK) (IF EXECUTED FOR CO-OWNERSHIP, ALL MUST SIGN.) | TITLE (TYPED OR PRINTED) |
|---|---|---|
| **Performance Aviation LLC** | _Wade Watters_ | **Manager** |
| | By: Wade Walters | |
| | | |
| | | |

ACKNOWLEDGMENT (NOT REQUIRED FOR PURPOSES OF FAA RECORDING: HOWEVER, MAY BE
REQUIRED BY LOCAL LAW FOR VALIDITY OF THE INSTRUMENT.)

ORIGINAL: TO FAA

AC FORM 8050-2 (9/92) (NSN 0052-00-629-0003) SUPERSEDES PREVIOUS EDITION

173000828131
$5.00 10/27/2017



EXHIBIT
F

FILED WITH FAA
AIRCRAFT REGISTRATION BR
2017 OCT 27   AM 8 14
OKLAHOMA CITY
OKLAHOMA